*Story, Justice,
 

 delivered the opinion of the court. — This is a ■ writ of error founded on a judgment of the circuit court in the district of Kentucky, in an action of ejectment, in which the plaintiff in error ' was the original plaintiff. The case is before us upon certain bills of exception taken by the plaintiff ; and to the consideration of these the court will
 
 \
 
 address their attention, without entering upon any examination of other „ facts, not involved in the decision of them.
 

 Some of the defendants, professing to hold a conveyance from the lessor of the plaintiff, Clarke, made by Carey L. Clarke, as his attorney in fact, offered in evidence the deed of conveyance, and the letter of attorney, “ and gave testimony conducing to prove them And Andrew Moore, the clerk of the Harrison circuit court, who brought the letter of attorney into this court, under process for that purpose, desiring to return, and considering it his duty to retain possession of that instrument, by consent of plaintiff and defendants, departed with it, leaving a copy. And at a subsequent day, Moses L. Miller was introduced as a witness to prove the letter of attorney;
 
 *220
 
 who stated, that being summoned as a witness, he met with the clerk of Harrison aforesaid, in Georgetown, who showed him an instrument, tbe signature of which he examined, and believed it to be the handwriting of James B. Clarke (the plaintiff’s lessor), with whose handwriting he was well acquainted ; and another witness was examined, tending to show that the instrument, so shown by said Moore to Miller, was the same previously read before this court, as aforesaid. When Andrew Moore (the clerk of Harrison court) was about to resume possession of the letter of attorney and to depart, the attorney of the plaintiff declared that he had no objection. It is not pretended, that any expectation of offering further proof was entertained, or intimated to the parties. To the admission of the testimony of Miller, the plaintiff objected, especially, in the absence of the letter of attorney. But the court overruled the objection, and submitted the testimony to the jury, as tending to prove that instrument.”
 

 The letter of attorney purports to be made by “ James B. Clarke, of the city of New York, and Eleanor his wife,” to “Carey L. Clarke, of the city of New York ;” to be dated on the 7th of October 1796, and to be sealed , ancl delivered in the presence of three witnesses. *The question is, -1 whether, under these circumstances, it ought to have been admitted in evidence ?
 

 In the ordinary course of legal proceedings, instruments under seal, purporting to be executed in the presence of a witness, must be proved by the testimony of the subscribing witness, or his absence sufficiently accounted for. Where he is dead, or cannot be found, or is without the jurisdiction, or is otherwise incapable of being produced, the next best secondary evidence is the proof of his handwriting; and that, when proved, affords primé
 
 facie
 
 evidence of a due execution of the instrument, for it is presumed, that he would not have subscribed his name to a false attestation. If, upon due search and inqury, no one can be found who can prove his handwriting, there is no doubt, that resort may then be had to proof of the handwriting of the party who executed the instrument; indeed, such proof may always be produced as corroborative evidence of its due and valid execution, though it is not, except under the limitations above suggested, primary evidence. Whatever may have been the origin of this rule, and in whatever reasons it may have been founded, it has been too long established, to be disregarded ; or to justify an inquiry into its original correctness.
 

 The rule was not complied with in the case at bar. The original instrument was not produced at the trial, nor the subscribing witnesses ; and their non-production was not accounted for. The instrument purports to be an ancient
 
 one;
 
 but no evidence was offered in this stage of the cause, to connect it with possession under it, so as to justify its admission as an ancient deed, without further proof. It is said, that the conduct of the parties amounted to a waiver of the due proof of the original. We are of opinion, that the production of the original was, under the circumstances, dispensed with by the parties, and that a copy of it was impliedly assented to as a substitute for the original. But we do not think, that the implication goes farther, and dispenses with the ordinary proof of the due execution of the original, in the same manner as if the original were present. It would be going very far, to, draw such a conclusion, from circumstances of so
 
 *221
 
 equivocal a nature. The rules of evidence are too important securities for the titles to property, *to allow such loose presumptions to prevail. It would be opening a door to great practical inconvenience ; and if a waiver of the ordinary proof is intended, it is easily reduced to writing.
 

 It is also said, that the language of the exception, that the defendants gave testimony “ conducing to prove” the instruments, may well be interpreted by the court to have included all the usual preliminary proofs. We do not think so : to justify the admission of the lowest kind of secondary proof, it should clearly appear, that all the preliminary steps have been taken and established. The court can presume nothing; there may not have been any preliminary proof whatsoever of the absence, death or incapacity of the witnesses ; and yet there may have been some evidence “ conducing to prove ” the due execution of the instruments. And the very circumstance stated in the bill of exception, that Miller was introduced,
 
 “
 
 as a witness to prove the letter of attorney,” repels the presumption that any antecedent proof had been given, which in point of law dispensed with the ordinary proofs. We think, then, that the testimony ought not to have been admitted, and that this exception is well founded.
 

 The plaintiff having then given
 
 prima facie
 
 evidence of title under a patent to Martin Pickett of 55,390 acres, and that the defendants were in possession of the land in controversy, and that the lessor of the plaintiff (Clarke), at the date of his deed, and ever since was, and had been, a citizen and resident of the state of New York, and having relied solely on the demise from Clarke, the defendants offered in evidence certain exhibits. One of these purported to be a release of 49,952 acres, by Carey L. Clarke, as attorney for James B. Clarke and John Byrant, on the 25th of November 1800, acknowledged before the surveyor of Scott county, and afterwards lodged with the auditor of public accounts. It recited, that James B. Clarke and Eleanor his wife, and John Byrant and Mary his wife, had appointed Carey L. Clarke their attorney, to sell, transfer and convey a certain tract on the waters of Eagle creek, in the county of Scott, and state of Kentucky, containing 100, L92 acres, entered in the name of Martin Pickett, ‘•‘which tract of land was then held by Clarke and Byrant as tenants r^g^g in common. It then proceeded to state, “ Now, therefore, I, the said *- Carey L. Clarke,
 
 attorney
 
 as aforesaid, in pursuance of an act of the legislature of the state of Kentucky, authorizing claimaints of land within its commonwealth to relinquish, by themselves or their attorneys, any part or parts of their claims, to the commonwealth, do hereby relinquish to the commonwealth of Kentucky, all the l’ight, title, interest, property, claim and demand of the said Clarke and Byrant of, in and to the hereinafter described tracts of land.” Another exhibit purported to be a release dated on the 25th of November 1801, by Carey L. Clarke, as attorney in fact of John Bryant, in a similar form, and containing a similar relinquishment to the state, of certain tracts of land, except that the attestation clause was in these words : “ In witness whereof, the said Bryant, by Carey L. Clarke, his attorney, hath set his hand and seal this 25th of November 1801. John Bryant, by Carey L. Clarke, his attorney, [l. s.]” The other exhibits need not be particularly mentioned.
 

 To prove these instruments of relinquishment, or properly speaking,
 
 *222
 
 that of James B. Clarke and wife, the defendants relied upon the power of attorney mentioned in the former bill of exceptions, and the original relinquishment from the auditor’s office ; and proved the execution thereof by the surveyor of Scott county. The plaintiff then moved the court to instruct the jury, that the instrument (of relinquishment), under the proof, did not'bind the plaintiff, and could not bar his recovery. But the court overruled the motion, and instructed the jury, that the said relinquishment for the 49,952 acres, if the execution thereof was satisfactorily proved, was a bar to the recovery of all the land described in said relinquishment; and on motion of the defendants, the court instructed the jury, that if they believed the execution of the power of attorney from James B. Clarke to Carey L. Clarke, and of the relinquishment in evidence (from Carey L. Clarke, as his attorney, of the date of 25th of November 1800), then it was incumbent on the plaintiff, to maintain this action, to show that the defendants, or some of them, were, at the service of the ejectment, outside *347] of the several parts relinquished to *the state. The opinions thus given and refused constitute the second bill of exceptions.
 

 Various objections have been taken, in the argument at the bar, upon the matter of these exceptions. It is said, that the relinquishment to the state, which was authorized by the act of 4th of December 1794 (Littell’s Laws of Kentucky 222), has not been made in such a manner as to become effectual in point of law ; for there has been no entry of the relinquishment in a book in the surveyor’s office of the county, as prescribed in the statute, nor has the power of attorney been there recorded ; and the state cannot take but by matter of record. Upon this objection, it is not, in our view of the case, necessary to give any opinion.
 

 It is said, in the next place, that the relinquishment purports to have been made in virtue of a power of attorney, recited in the instrument itself, to be from James B. Clarke and his wife, and John Bryant and his wife ; whereas, the power produced purports to be from Clarke and his wife only, and therefore, the latter power does not authorize the relinquishment, or, in other words, it was not that under which it was made. There is great force in this objection ; but on this also we do not decide.
 

 Another objection is, that the power of attorney produced, even if duly executed, does not justify the relinquishment'. It purports to authorize Carey L. Clarke “ to sell, dispose of, contract and bargain for all, or so much of said tract of land, &c., and to such person or persons, and at such time or times, as he shall think proper, and in our or one of our names, to enter into, acknowledge and execute all such deeds, contracts and bargains for the sale of the same, as he shall think proper ; provided always, that all deeds for the land are to be without covenants of warranty, or covenants warranting the title to the land from the patentee, and his assigns,” &c. The language here used is precisely that which would be used in cases of intended sales, or contracts of sale, of the land, for a valuable consideration, to third persons, in the ordinary course of business. In the strict sense of the term, a relinquishment of the lands to the state, under the act of 1794, is not a sale. That act, after reciting, that it is represented to the general *348] assembly, that many persons hold tracts of land *subject to taxation, and are desirous of continuing their interest in only part thereof, and that others have claims to lands, which they wish to relinquish, without
 
 *223
 
 their being subject to the expense of law-suits, proceeds to enact, that it shall be lawful for any person or persons, his heirs, or their agent or attorney, lawfully authorized so to do, to relinquish or disclaim his, her or their title, interest or claim to and in any tract or part of a tract of land that he, she or they may think proper; by making an entry of the tract, or that part thereof, so disclaimed, with the surveyor of the county in which the land, or the greater part thereof, shall lie, in a book to be kept for that purpose, which said entry shall describe the situation and boundary of the land disclaimed, with certainty, and be signed by the party, in the presence of the surveyor, who shall attest the same ; and that by virtue of the aforesaid entry and disclaimer, all the interest of the party in the said tract shall be vested in the commonwealth, and shall never be reclaimed by the party, or his, her or their representatives. The object of the act is to authorize a relinquishment, either on account of the land being subject to taxation, or to avoid law-suits on account of conflicting claims.
 

 It is not pretended, that the present relinquishment would have been authorized by the letter of attorney, on the latter account. It is supposed at the bar, to have been done on account of the taxes due on the land, though that object is not avowed on the face of the deed. There is, accordingly, spread upon the record, a transcript of the taxes laid on the land. By the laws of Kentucky (Act of 1799, § 17, 2 Litt. Laws 327), taxes constitute a perpetual lien on the land ; but such taxes constitute no personal charge against non-residents. And the act of 1799 further provides, that where any person has paid, or shall, on or before the first day of December then next, pay the tax on any tract of land which shall afterwards be lost or relinquished, the person losing shall, upon application to the auditor, receive an audited warrant to the amount paid by him, with a deduction of seven and a half per cent., which shall be receivable in taxes, as other audited warrants are. The effect of the Kentucky law, then, so far as non-residents are concerned, is, that by their relinquishment, they obtain no personal discharge from any personal charge ; and that *the only effect is, that, in the specified cases, if they have paid the taxes, they are, with a *- small deduction reimbursed.
 

 In point of fact, then, the relinquishment gives them nothing as a compensation for the land ; but restores back again only the money (if any) which they have paid. Can such a relinquishment, for the purposes contemplated by the statute, be, in any just sense, deemed a sale ? We think not. It is a mere abandonment of the title ; or, in the language of the act, a relinquishment or disclaimer. The letter of attorney manifestly contemplated the ordinary contracts of bargain and sale between private persons, for a valuable consideration ; and cpnveyance by deed, without covenants of warranty. The very reference to covenants, shows that the parties had in view the common course of conveyances, in which covenants of title are usually inserted, and the clause excludes them. The statute does not contemplate any deed or conveyance, but a mere entry of relinquishment or disclaimer of record ; this entry constitutes a good title in the state ; the state does not buy, nor does the party sell, in such case. It seems to us, that the nature of such a relinquishment, amounting, as it does, to a surrender of title, without any valuable consideration, ought not to be inferred from any words, however general, much less from words so appropriate to
 
 *224
 
 cases -of mere private sales as those in the present letter of attorney. The question, whether such a relinquishment should be made or not, is so emphatically a matter of pure discretion in the owner, in the nature of a donation, that it ought not to be presumed to be delegated to another, without the most explicit words used for, and appropriate to, such a purpose. We think, that the words of the present letter of attorney are not sufficient to clothe the agent with such an authority.
 

 But if this objection were not insuperable, there is another, which, though apparently of a technical nature, is fatal to the relinquishment. It is, that the deed is not executed in the names of Clarke and his wife, but by the attorney, in his own name. It is not, then, the deed of the principals, but the deed of the attorney. The language is, “ I, the said Carey L. Clarke, attorney as aforesaid,”
 
 &o., “
 
 do hereby relinquish,” &c.; and the attesting clause is, “ In witness whereof, the said Carey L. Clarke, attorney # as aforesaid, has hereunto subscribed *his hand and seal, this 25th day 350J of November, in the year of our Lord 1800. Carey L. Clarke, [n. s.] ”
 

 The act does not, therefore, purport to be the act of the principals, but of the attoi’ney. It is his deed, and his seal, and not theirs. This may savor of refinement, since it is apparent, that the party intended to pass the interest and title of his pi’incipals. But the law looks not to the intent alone, but to the fact, whether that intent has been executed in such a manner as to possess a legal validity.
 

 The leading case on this subject is
 
 Combe’s Case,
 
 9 Co.
 
 75,
 
 where authority was given by a copyholder to two pex-sons, as his attorneys, to sui-render ten acres of pasture to the use of J. N.; and afterwards, at a manor court, they surrendered the same, and the entx-y on the court-roll was, that the said attorneys, in the same court, showed the writing afox-esaid, bearing date, &c., and they, by vix-tue of the authority to them by the said letter of attorney given, in full court, surrendered into the hands of the said lord the said ten acres of pasture, to the use of the said J. N., &c.; and the question was, whether the surrender was good or not; and the court held it was good. “ And it was resolved, that when any has authority, as attorney, to do any act, he ought to do it in his name, who gives the authority, for he appoints the attorney to be in his place, and to represent Ms person ; and therefore, the attorney cannot do it in his own name, nor as his proper act, but in the name and as the act of Mm who gives the authority. And where it was objected, that in the ease at bax’, the attorneys have made the surrender in their own name, for the entxy is that they surrendered, it was answered and resolved by the whole court, that they have well performed their authoxüty ; for, first, they showed their letter of attorney, and then they, by the authority to them by the letter of attorney given, surrendered, &c., which is as much as to say, as if they had said, we, as attorneys, &c., surrender, &c., and both these ways are sufficient. As he, who has a letter of attorney to deliver seisin, saith, I, as attorney to J. S., deliver you seisin ; oí-, I, by force of this letter of attorney, deliver you seisin. And all that is well done, and a good pursuance of his authority. But if attorneys have power by writing to make leases by indenture for years,
 
 &o.,
 
 they cannot make indentures *3511 *n ^6*1' owri names, but in the name of him who gives the war-
 
 ■'
 
 rant.” *Such is the language of the report, and it has been quoted at large, because it has been much commented on at the bar ; and it points out
 
 *225
 
 a clear distinction between acts done
 
 in pais,
 
 and solemn instruments or deeds, as to the mode of their execution by an attorney. It has been supposed, that the doctrine of Lord Holt, in
 
 Parker
 
 v.
 
 Kett,
 
 1 Salk. 95, and better reported in 2 Mod. 466, intimated a different opinion. But, correctly considered, it is not so. Lord Holt expressly admits (p. 468), that the doctrine in
 
 Combe’s Case,
 
 that he who acts under another, ought to act in his name, is good law, beyond dispute ; and the case there was distinguishable ; for it was the case of a sub-deputy steward, appointed to receive a surrender, which was an act
 
 in pais.
 

 However this may be, it is certain, that
 
 Combe’s Case
 
 has never been departed from, and has often been acted upon as good law. In
 
 Frontin
 
 v.
 
 Small,
 
 2 Ld. Raym. 1418, where a lease was made between M. F., “ attorney of J. F.,” of the one part, and the defendant of the other part, of certain premises, for seven years, in a suit for rent by M. F., it was held, that the lease was void, for the very reason assigned in
 
 Combe’s Case.
 
 Lord Chief Baron Gilbert (4 Bac. Abr., Leases and Terms for Years, I. 10, 140) has expounded the reasons of the doctrine, with great clearness and force ; and it was fully recognised in
 
 White
 
 v.
 
 Cuyler,
 
 6 T. R. 176, and
 
 Wilks v. Back,
 
 2 East 142. If it were necessary, it might easily be traced back to an earlier period than
 
 Combe’s Case.
 
 4 Bac. Abr., Leases and Terms for Years, I. 10, p. 140, 141; Com. Dig., Attorney, C. 14 ; Moore 70. In America, it has been repeatedly the subject of adjudication, and has received a judicial sanction. The cases of
 
 Bogart
 
 v.
 
 De Bussy,
 
 6 Johns. 94 ;
 
 Fowler
 
 v.
 
 Shearer,
 
 7 Mass.
 
 14,
 
 and
 
 Elwell
 
 v.
 
 Shaw,
 
 10 Ibid. 42, are dii’ectly in point. It appears to us, then, upon the grounds of these authorities, that the deed of relinquishment to the state was inoperative ; and consequently, the court erred in refusing the instruction prayed by the plaintiff, that it did not bind him ; and in directing the jury, that if the execution of it was proved, it. was a bar to the recovery of the land described therein.
 

 This aspect of the case renders it unnecessary to decide, whether, supposing the relinquishment good, it was incumbent *on the plaintiff to rsli show, that the possession of the defendants, or some of them, was, at
 
 <-
 
 the time of the service of the ejectment, outside of the land relinquished. That point was before us in
 
 Hawkins
 
 v.
 
 Barney’s Lessee,
 
 at this term
 
 (post,
 
 p. 457); and it was there decided, that where the plaintiff’s title deed, as exhibited by himself, contains an exception, and shows that he has conveyed a part of the tract of land to a third person, and it is uncertain, whether the defendants are in possession of the land not conveyed, the
 
 onus probandi
 
 is on the plaintiff. Here, the deed of relinquishment is exhibited on the part of the defendants, to dispute the plaintiffs’ title to the land possessed by them ; and it has been contended, that this creates a distinction, and throws' the burden of proof on the defendants to show, that the plaintiff has parted with his title to the particular land in controversy. The case, however, does not call for any absolute decision on this point; nor does it appear with certainty, from the evidence, that the relinquished land was within the boundaries of the land in controversy in the suit.
 

 The third bill of exception states, that on the trial of the cause, the plaintiff having given in evidence the patent to Pickett, and by mesne conveyances, to Clarke, the lessor of the plaintiff, and proved that Clarke, at
 
 *226
 
 the date thereof and ever since, was resident in the state of New Ycrk, and that the title deeds embrace the land in controversy, and that the defendants were all in possession, at the commencement of the suit, after the defendants had given in evidence the deed of relinquishment, and the court had given the instructions thereon, gave testimony conducing to prove that some of the defendants, viz., Hinton, Hughes, Vance, Gillum, Antle, Sally Courtney, were not within the limits set forth in the relinquishment: and these defendants all relying in their defence upon their possession, they gave in evidence a patent to James Gibson, 1st of March 1793, under a survey of 1783, and a patent to Sterrett and Grant, 24-th of October 1799, under a survey in 1792 (reciting them), and gave testimony conducing to prove, that Sally Courtney, &c., were within the boundaries prescribed by the patent of Grant and Sterrett; and Hinton, Hughes, Gillum, Vance and Antle were within the bounds of the patent to Gibson ; and touching the possession within Gibson’s patent, the witness stated, that in 1796, *Ninton entered within the patent of Gibson, claiming a part of the J tract under that grant, and that the tenement has been occupied ever since ; and at subsequent periods, the other tenants claiming under the said Hinton, had settled in the same manner, under other parcels, claimed by them as parts of Hinton’s purchase ; and from the time of their respective settlements, their possession had been continued. The witness knew not the extent or boundary of any of the purchases, and no title papers were produced. And touching the possession within the patent to Sterrett and Grant, the witness stated, that in 1791 or 1792, Griffin Taylor entered under that patent, that the tenements, have been still occupied by Taylor and his alienees ; and at periods subsequent, the other tenants had entered and taken possession, claiming under the said Taylor, within the limits of the patent to Sterrett and Grant. No written evidences of purchase were offered.
 

 Thereupon, the plaintiff moved the court to instruct the jury : 1. That the possession of these defendants was no bar to the defendants’ action : 2. That the statute of limitation could only protect the defendants to the extent that they had actually inclosed their respective tenements, and had occupied for twenty years preceding the commencement of the suit. The court overruled the motion, and instructed the jury, that adverse possession was a question of fact; that, under the adverse patents given in evidence, it was not necessary to show a paper title derived under those adverse grants, to make out adverse possession ; but such hostile possession might be proved by parol; that an entry under one of the junior grants given in evidence by one of the defendants, and within the boundaries of the elder grant, without any specific metes and bounds, other than the abuttals of the grant itself, -did constitute an adverse possession, to the whole extent of the abuttals and boundaries under which such entry was made. To this refusal and opinion, the plaintiff excepted ; and the question now is, whether the court erred in either respect ?
 

 In considering the points growing out of this exception, it may be proper to advert to the doctrine, which has been already established in respect to the nature and extent of the rights growing out of adverse possession. Whether an entry *upon land, to which the party has no title, and claims no title, be a mere naked trespass, or be an ouster or disseisin of the true owner, previously in possession of the land, is a matter of fact, *354]
 
 *227
 
 depending upon tbe nature of the acts done, and the intent of the party so entering. The law will not presume an ouster, without some proof; and though a mere trespasser cannot qualify his own wrong, and the owner may, for the sake of the remedy, elect to consider himself disseised, yet the latter is not bound to consider a mere act of trespass to be a disseisin. If a mere trespasser, without any claim or pretence of title, enters into land, and holds the same adversely to the title of the true owner, it is an ouster or disseisin of the latter. But in such case, the possession of the trespasser is bounded by his actal occupancy ; and, consequently, the true owner is not disseised, except as to the portion so occupied. But where a person enters into land, under a deed or title, his possession is construed to be co-extensive with his deed or title ; and although the deed or title may turn out to be defective or void, yet the true owner will be deemed disseised, to the extent of the boundaries of such deed or title. This, however, is subject to some qualification. For, if the true owner be, at the same time, in possession of a part of the land, claiming title to the whole, then, his seisin extends, by construction of law, to all the land which is not in the actual possession and occupancy, by inclosure or otherwise, of the party so claiming under a defective deed or title. The reason is plain ; both parties cannot be seised, at the same time, of the same land, under different titles, and the law therefore adjudges the seisin of all, which is not in the actual occupancy of the adverse party, to him who has the better title. This doctrine has been on several occasions recognised in this court. In
 
 Green
 
 v. Liter, 8 Cranch 229-30, the court said the general rule is, that if a man enters into lands, having title, his seisin is not bounded by his occupancy, but is held to be co-extensive with his title ; but if a man enters without title, his seisin is confined to his possession by metes and bounds. Therefore, the court said, that as between two patentees in possession, claiming the same land under adverse titles, he ■who had the better legal title, was to be deemed in seisin of all the land not included in the actual close of the other patentee. The same doctrine was held in
 
 *Barr
 
 v.
 
 Gratz, 4
 
 Wheat. 213, 223 ; where the court said, that r where two persons are in possession, at the same time, under different *- titles, the law adjudges him to have the seisin of the estate, who has the better title. Both cannot be seised, and therefore, the seisin follows the title. And that where there was an entry, without title, the disseisin is limited to the actual occupancy of the party disseising. And in the reference to the facts of that case, the court held, that in a conflict of title and possession, the constructive actual seisin of all, the land, not in the actual adverse possession and occupancy of the other, was in the party having the better title. In the
 
 Society for Propagating the Gospel
 
 v.
 
 Town of Pawlet, 4
 
 Pet. 180, 504, 506, which came before the court upon a division of opinion, upon a state of facts agreed, the pourt held, that where a party entered as a mere trespasser, without title, no ouster could be presumed, in favor of such a naked possession ; but that where a party entered under a title adverse to the plaintiffs, it was an ouster of, or adverse possession to, the true owner.
 

 It appears to us also, that the doctrines, thus recognised by this court, are in harmony with those established by the authority of other courts ; and especially, of the courts of Kentucky, in the cases cited at the bar. See also Johnson’s Digest, Ejectment, Y,
 
 b
 
 ; Bigelow’s Dig., Seisin and Disseisin, A, B, C, D.
 

 
 *228
 
 It remains to apply these questions to the present exception. The court was called upon, in the first instruction, to declare, that the possession of the defendants was no bar to the action. This obviously required the court to give an opinion upon matters of evidence proper for the consideration of the jury, and which might be fairly open to controversy before them. It was, therefore, properly denied. The second instruction required the court to declare, that the statute of limitations could only protect the defendants to the extent, that (they) had actually inclosed their respective tenements, and occupied, for twenty years preceding the commencement of the suit. The difficulty upon this instruction is, that no evidence was adduced, or, if adduced, it was not competent for the court to decide upon it, that either Pickett, the patentee, or the lessor of the plaintiff, at the time of the entry and ouster by the defendants, had any actual seisin or possession of any part of the land mc.uded in *the patent; so as to limit their possession
 
 '
 
 to the bounds of their actual inclosures or occupancy. The entry of the defendants was certainly under a claim of title, under the patents of Gibson and Sterrett, and Grant. If Pickett, or his grantees, were then in possession under his patent, the defendants, upon the principles already st.ated, would have been limited, as to their adverse possession, to the bounds of their actual occupancy. But that not being shown, the question resolves itself into this, whether a party entering into land under a patent, but without showing a paper title to any particular portion of the land included in that patent, is not to be deemed as claiming to the abuttals of the patent, against adverse titles held by other parties, not then in seisin or possession under their titles.
 

 The opinion of the circuit court was (as the instruction given shows), “that adverse possession was a question of fact” (which might be true, as applicable to the case before it, though it is often a mixed question of law and of fact); “ that under the adverse patents given in evidence, it was not necessary to show a paper title, under those adverse grants, to make out adverse possession, but that such hostile possessions might be proved by parol ” (which, as a general proportion, is certainly true, as adverse possession may exist independent of title) ; and what is the material part of the instruction, “that an entry under one of the junior grants given in evidence by the defendants, and within the boundaries of the elder grant of Pickett, made by one claiming under such junior grant, without any specific metes and bounds, other than the abuttals of the grant itself, did constitute an adverse possession to the whole extent of the abuttal and boundaries, under which the entry was made.” The prayer of the plaintiffs, then, was, or might have been, rejected, because it assumed the decision of a question of fact; that is, that the defendants entered without any claim of title by metes and bounds : and the instruction given was, that an entry under the junior grants, by one claiming under them, by no other abuttals than those of the grants, was to be deemed an entry and adverse possession to the extent of those abuttals. This decision is fully supported by the cases in 2 A. K. Marsh. 18, and 1 Ibid. 876. Looking, therefore, to the instruction, in the qualified manner in which it is given, and with reference to the fact that no *seisin was shown in Pickett, or the -* lessors of the plaintiff, in any part of the tract included in his patent, at the time of the entry of the defendants, it seems to us, that, according to
 
 *229
 
 tbe local decisions, tbe refusal was right, and tbe instruction giver, was correct in point of law.
 

 We think it proper to add, that no notice has been taken of tbe fact, that Clarke, tbe lessor of tbe plaintiff, was a
 
 non-resident;
 
 because it does not appear, that any of tbe instructions were asked or given, in reference to tbe legal effect of bis non-residence.
 

 Tbe judgment is, therefore, reversed, for tbe errors stated in tbe first and second bills of exception ; and tbe cause remanded to the circuit court, with directions to award a
 
 venire facias de novo.
 

 Baldwin, Justice, dissented, as to tbe possession.
 

 This cause came on, &c. : It is considered by tbe court here, that there was error in tbe circuit court in admitting tbe testimony of Moses L. Miller, under tbe circumstances set forth in tbe first bill of exceptions. And that there was error in tbe circuit court in refusing to instruct the jury, upon tbe motion of tbe plaintiff, that the instrument stated in tbe second bill of exceptions, under tbe proof, did not bind tbe plaintiff, and could not bar bis recovery ; and in instructing tbe jury, that the relinquishment stated in the same bill of exceptions for 49,952 acres, if tbe execution thereof was satisfactorily proved, was a bar to the recovery of all tbe land described in said relinquishment, as set forth in tbe same bill of exceptions. But there is no error in tbe court, in refusing to instruct tbe jury, on the motion of tbe plaintiff, that tbe possession of the defendants was no bar to tbe plaintiffs’ action ; and that tbe statute of limitations could only protect tbe defendants to tbe extent that (they) had actually inclosed their respective tenements, and occupied for twenty years preceding the commencement of the suit, as set forth in the third bill of exceptions ; and that there was no error in tbe court, in giving the instruction to the jury, set forth in the same bill of exceptions, in tbe manner and under tbe circumstances therein set forth. And, &e.