Johnson, J.
The leading question in this case is, whether the Junietta belonged to the plaintiff or to Patrick Usher, at the time the defendants’ attachments were leviedupon her. The deed, or bill of sale, from William Usher, as attorney for Patrick Usher, was executed before the attachments were levksL— "But it is objected, for defendants, 1. That the power, under which William Usher acted, did not au- *160 tborize him to sell the Junietta. 2. Supposing it did, that it is not well executed, he having done it in his own name, and not in the name of his principal.— The letter of attorney, from Patrick to William, is very broad in its terms, the specifications extend to almost every thing in which he could have any concern, and authorises him to act for him, and in his name. Amongst other things that he might sell “all, or any part, of such goods, merchandize or effects, of the said Patrick, which may come to his possession or knowledge.” The first objection is founded upon the notion, that a ship, on account of its magnitude and importance, ought not to be classed amongst goods, merchandize and effects, and this idea is favored by some of the civil law writers, 2 Valin, 223; 4 Robertson, Ad. Rep. 388. But the common law knows only two descriptions of property, real and personal, and ships, for the most obvious reason, fall within the latter. They do not, it is true, fall within the common acceptation of the terms, goods or merchandize, but the word “effects,” has a very extensive signification, and, according to Lord Mansfield, is equivalent to property, or worldly substance, and in a bequest, passes the testator’s whole personal estate, Campbell v. Prescott, 15 Ves. 507.
The question raised by the second objection came before the Court at Columbia, in Prior v. Coulter, I think, at May Term, 1830, and from my recollection of it, for it is not yet reported, was precisely analogous to this. The principal by letter of attorney, authorized his agent to sell and dispose of a patent right for some machinery. The agent made a bill of sale or deed to the plaintiff, which as in this case was, “I the agent, attorney,” &c. and it was signed by the agent as attorney for the principal, and it was held to be a bad execution of the power, and did not bind the principal. Not having that case to refer to, I have turned again to the authorities; and notwithstanding there is a refinement about them, the reasons of which are not very palpable to common observation, Í am satisfied that the principle is correct. Judging from *161 the formula, adopted in this, and other cases like it, one would think that the intention which determines the validity of the contract, was obvious enough — that the agent intended to do precisely what his principal had authorized, but that is not sufficient. Delegated power must be strictly pursued, and unless it is the principal is not bound. The authority given by Patrick to Wm. Usher, is, that he should sell &c. for him, and in his name; yet in the hill of sale it is “I, Wm. Usher,” who acts, “he the said William Usher” who covenants to warrant. It is the agent who speaks in his own name, and not the principal through the agent. The agent had no property in the Junietta, and could convey none. He had nothing but the naked power to sell for his principal. The addition that he was the attorney of Patrick Usher is merely surplusage.
Combe’s case, 9th Co, Hep. 75, seems to have laid the foundation for the rule, which has been followed ever since ; that where one has authority as attorney to do any act, he ought to do it in the name of him who gives the authority, for he appoints the attorney to be in his place, and to represent his person. In that case a distinction is taken between an authority to do a mere ministerial act in pais, as the making a surrender of a copy-hold or livery of seizen, and the execution of a deed. And the reasons given for it m Bacon, Abr, Tit. Leases and terms for years 9, 10, are, in my judgment, perfectly satifactory. Surrendering a copy-hold is done by holding the Court roll, and livery of seizen by delivering a twig or turf,, and when that is done by an attorney, the law pronounces upon them as if the act was done by the master himself, and carries the possession accordingly; but in a lease for years, it is otherwise, for the indenture or deed alone conveys the interest, and is the very essence of the lease as passing it out of the lessor at first, and vesting it in the lessee. The deed itself is the conveyance, without any subsequent construction or operation of law, and therefore must be executed in the name of the principal. If the attorney make the lease, it is *162 v°id- The interest was in the principal, and it cannot pass from him, because he is no party, and it cannot pass from the attorney, because he had no inter-est at all. The addition that he made it by letter of attorney, cannot help it, because that letter of attorney made over no interest to him, and the same lease cannot have the effect of drawing the interest oat of the principal, and vesting it in the attorney, and transferring it to the lessee. The case of Frontin v. Small 2 Ld. Ray, 1418, proceeds on the same principle, and so indeed do all the English cases. On the first view of the case of Wilks v. Back, 2 East. 142, I was disposed to think it had introduced a modification of the rule which would have saved this case; but that turned altogether upon the manner of signing the bond, and it was certainly very immaterial, whether the name of the agent or the principal was placed first, provided the undertaking or obligation, was in the name of the principal, and that I presume was the case as nothing is said about it.
The rule has been recognized and adopted in New-York, Massachusetts and Maine, Bogart v. De Bussey, 6 John. 94. Elwell v. Shaw, 16 Mass. 42. (the same case,) 1 Greenleaf, 339, and has been well considered by Mr. Justice Story, in the case of the lessee of Clarke et. al. v. Courtney et. al. 5 Peters 350, decided in the Supreme Court of the United States so late as 1831.
Conceding for the sake of the argument, that the bill of sale from William Usher to the plaintiff is void, in consequence of not having been executed according to the authority given, the counsel for the plaintiff have contended that as an act in pais, the contract of sale was good. If there had been an actual delivery, there might possibly have been some foundation on which to rest this position, but the vessel was then at sea, and never was in the possession of the plaintiff under this sale. The bill of sale therefore constituted the only evidence of the plaintiff’s title, and his rights must be resolved by it. That was itself the contract, and no other evidence of it was admissible.
*163 Reliance is also placed on the memorandum indorsed by Patrick Usher, on the register taken out for the Junietta, from the Custom House at Wilmington by him and in his name, as giving the plaintiff a lien on the vessel for the payment of the purchase money. That is dated on the 4th April 1826, about the time the plaintiff delivered the bill of sale to him, and probably cotemporaneously with it, and is to the following effect; ‘T, Patrick Usher having given John Welsh of Philadelphia, three notes for $12,705 58, one payable on, &c. in payment for the brig Junietta, agree, that the said brig shall not be sold until the said notes are paid.”
The plaintiff’shill of sale to Patrick Usher, divested him of the property in the brig, nor is there any thing in this memorandum, supposing it to have been executed cotemporaneously with the bill of sale, reserving to the plaintiff the right; of property, as in Harrington, v. Dupree, State Rep. 391, nor does it import a direct charge on the vessel for the payment of money, and at law is clearly nothing more than an agreement not to sell, for the breach of which an action would lie, if the plaintiff was damnified. It is when put in the strongest point of view, only a condition subsequent, constituting a personal undertaking, Co. Lit. 34.—
This is not directly controverted, but it is attempted to be put upon the footing of an equitable mortgage, and on that ground, a lien is claimed for the plaintiff, as a security for the balance due him.
According to the civil law, the seller has a lien on the thing sold for the purchase money, and the Courts of Chancery in England have gone very far in giving effect to this rule, by converting agreements to mortgage into mortgages, in marshalling the assets of the estates of bankrupts, amongst creditors; and it seems to be felt there, that that doctrine has been pushed quite far enough, and ought not to be extended, 2 Rose 828. 17 Yes. 309, and I know of no case which has gone so far as this. In Cotteral v. Purchase Cases, Temp. Talbot, 61, two sisters being seized of an estate, one of them conveyed her moiety to defendant *164 by a» absolute deed, in consideration of £104; but it was admitted that it was intended to be a mortgage, redeemable on payment of the money and interest. That deed was afterwards cancelled, and in consideration of a further sum which made up, in the whole £184, she conveyed as before; but in this last deed, there was a covenant that she would not agree to any division or partition of the estate, or cause to be made any partition or division thereof, without the license, consent, advice and appointment of the purchaser.—
If the whole estate passed by the deed, this covenant was perfectly idle and unmeaning; and it is impossible to give to it any effect, but by supposing that it was the intention of the parties, that the equity of redemption or some other estate, should remain in the grantor, for without that, she could have no power to make partition, and the object of the covenant was to restrain her in the exercise of that power. That interpretation is greatly aided by the concession, that the first conveyance, although absolute, was intended as a mortgage. But upon a bill filed by the grantor to redeem, it was held that the grantee took the absolute estate, and especially as the plaintiff had acquiesced in the defendant’s possession under it. In the course of the Ld. Chancellor’s remarks on this case, he alludes to a custom of making a mortgage by an absolute deed with a defeazance separate from it, as being very suspicious and indicative of fraud, which remark is alike applicable to this case, for here the bill of sale is absolute, and the memorandum set up as a lien, is indorsed on the register.
There is another objection to settingup this memorandum as an equitable mortgage. They are peculiarly of equitable jurisdiction, and never can be' set up because, there is no necessity for it, except when there is a controversy amongst creditors about the funds of an insolvent or bankrupt. That Court can obtain possession of all the funds and make all the creditors parties, and so marshall the assets as to do equity to all. But not so in the Court of law even by the process of attachment. That Court, can have *165 possession only of tbe funds attached, and the only parties are those who think proper voluntarily to come in and claim an interest in the property attached, and they are put to plead it in the forms of law, (1 Brev. Dig. title attachment, page 34, sec. 1,) a mode of pleading utterly incompatible with the great diversity of parties and interests, which might arise in the settlement of an insolvent estate. The case of Winslow v. Arnold, decided in this Court in April, 1830, is decisive of this question. We are therefore of opinion that the motion in this case must be granted, and a new trial is accordingly ordered.
O’Neall J. concurred.
Harper J. absent.