# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTIES OF PLYMOUTH, BARNSTABLE, BRISTOL, AND DUKES-COUNTY, OCTOBER TERM 1839, AT PLYMOUTH.

==========

##### PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

---

## The Inhabitants of the Second Precinct in Rehoboth *versus* Thomas Carpenter *et al.*

A parish was incorporated in 1759, and in 1761 a committee, to be annually chosen by the parish, was incorporated to receive and manage the parish fund. In 1774 the proprietors of the common and undivided lands in the town granted, by vote, to the parish a lot of land, upon which the parish erected a meetinghouse. In 1792, on the petition of the parish and of nearly all the members individually, the petitioning members were incorporated into a new religious society ; and the act of 1761 was repealed, and the persons who were then the trustees of the parish, and their successors, to be chosen by the society, were incorporated, with power to receive and manage the property, real and personal, in the hands of the trustees of the parish, for the support of the minister of the society. In 1793, the grantors of the meetinghouse lot reconsidered their vote, and granted the land to the society by deed with general warranty, and the society entered upon all the real estate of the precinct, and remained in possession more than thirty years ; during which time the parish held no meeting, and did no act indicating an intention to resume the exercise of their corporate powers. It was *held*, that if the parish had not ceased to exist, it was disseised of the land, and its right of entry was tolled by long continued adverse possession.

An aggregate corporation may acquire a title to land by disseisin and exclusive adverse occupation, although it did not authorize such disseisin and occupation, by deed.

Where an act of the legislature authorized the trustees of an aggregate corporation to take possession of land, and the trustees accordingly entered upon it and disseised the owner, the authority thus derived was deemed equivalent to an authority under the seal of the corporation.

Second
Precinct in
Rehoboth
v.
Carpenter.

TRESPASS for breaking and entering the plaintiffs' close and meetinghouse in Rehoboth.

The defendants severally pleaded the general issue; also, *actio non*, because there was not, on the day of the purchase of the writ, any such body corporate as The Inhabitants of the Second Precinct in Rehoboth.

At the trial, before *Putnam* J., the plaintiffs introduced an act, passed January 9th, 1759, incorporating the second precinct in Rehoboth, and proved that immediately after the passage of that act, the precinct held a meeting and was duly organized.

In 1761, an act was passed, incorporating the committee of the precinct, and their successors, by the name of the Trustees of the Second Parish of Rehoboth, for the purpose of managing a fund of £1000, of which a part, to wit, £600, had been raised by a sale of lands belonging to the precinct, and the residue was to be raised by subscription by the members of the precinct, the interest of which was to be paid to a minister of a congregational church, resident and officiating within the precinct ; and the act provided that the committee should be accountable to the precinct.

The precinct continued to act in their corporate capacity until March 26th, 1792, from which time until December 28th, 1829, there was no meeting of the precinct, and no act on their part indicating an intention of resuming the exercise of their corporate powers.

In 1774, the proprietors of the common and undivided lands in Rehoboth granted, by vote, to the first congregational society in the second precinct, a lot of land, for the purpose of erecting a meetinghouse thereon, with the condition that the precinct will grant to the town and propriety the liberty of assembling in the meetinghouse, when erected, to do the public business of the town and propriety ; and the precinct immediately erected a meetinghouse upon the land.

Before the year 1792, a large proportion of the inhabitants of the precinct had become baptists, &c. and ceased to attend on public worship with the congregational society ; and in that year the precinct voted to petition the legislature for the incorporation of a new society, and agreed upon a petition and

the form of an act ; and in consequence of these proceedings and of a petition signed by eighty-eight inhabitants of the precinct, (being nearly all the persons who were in the habit of attending the congregational meetings in the precinct,) an act was passed on the 19th of June, 1792, incorporating the petitioners by the name of The Catholic Congregational Church and Society in the Second Precinct in the town of Rehoboth. By the same act the act of 1761 was repealed, and the trustees, at that time, of the precinct, and such as might be thereafter annually chosen by the new society, were empowered, by the name of the Trustees of the Catholic Congregational Church and Society in the Second Precinct in Rehoboth, to receive all the donations and subscriptions, both real and personal, then in the hands of the trustees of the precinct, and also such other grants, appropriations and donations, real or personal, as had been or should thereafter be made for the purposes mentioned in the act.

The new society was organized in March 1793. The book of records of the precinct passed into their hands, and they took immediate possession of all the property, real and personal, which had belonged to the precinct, and continued to manage the personal property and remained in the uninterrupted possession of the real estate, until the 2d of July, 1830. During all this time they occupied the meetinghouse, took care of it, and from time to time repaired it.

The defendants introduced a deed from the proprietors of the common and undivided lands in Rehoboth, dated the 20th of March, 1793, by which, after reciting that the proprietors had voted to reconsider their vote of 1774 granting the lot for the meetinghouse, the same lot is granted to the Catholic Congregational Church and Society, with general warranty, reserving to the inhabitants of the town, and the proprietors of the township, the privilege of occasionally holding town meetings and proprietors' meetings in the meetinghouse.

The defendants also proved, that in December 1829, application was made to a justice of the peace to call a meeting of the second precinct ; that he issued his warrant accordingly ; that at the meeting so called a moderator and a clerk were chosen ; and that then it was voted by a large majority, that there

12 ·

was no such corporation as the second precinct, and the meet ing was then dissolved. Similar meetings were held in February and March 1830, when the like vote was passed and the meetings were thereupon dissolved.

The plaintiffs proved, that at a meeting held in April 1830, by virtue of a similar warrant, the precinct proceeded to choose its officers, and then authorized certain persons to obtain possession of the property belonging to the precinct ; and that in pursuance of that vote the committee so chosen entered upon the *locus in quo.* The entry of the defendants into the meetinghouse after such entry by that committee, was the trespass complained of.

The plaintiffs also offered in evidence an act passed on June 22d, 1799, by which one Noah Fuller was set off from the first to the second precinct.

The defendants contended, that upon these facts the second precinct was dissolved in 1792 ; or if not then dissolved, that all the real estate of that corporation was by the act of 1792 transferred to the Catholic Congregational Church and Society ; or if this were not so, that the society last mentioned had had such a possession of the meetinghouse, and under such circumstances, that this action could not be maintained.

A verdict was taken for the plaintiffs by consent, subject to the opinion of the whole Court.

*Oct. 25th, 1832.*

*Warren,* for the defendants. To the point that the act of 1792 transferred the real estate to the new society, he cited *Rice* v. *Parkman,* 16 Mass. R. 326 ; that if this was not so, the plaintiffs were disseised in 1793, and continued disseised for thirty-seven years, and therefore could not maintain this action, *Higbee* v. *Rice,* 5 Mass. R. 352 ; *Kennebec Purchase* v. *Laboree,* 2 Greenleaf, 281 ; *Prescott* v. *Nevers,* 4 Mason, 326 ; *Lessee of Clarke* v. *Courtney,* 5 Peters, 355 ; *Milford* v. *Godfrey,* 1 Pick. 91 ; and that the second precinct no longer existed, Angell & Ames on Corp. 507 ; *Slee* v. *Bloom,* 19 Johns. R. 456.

*W. Baylies* and *A. Cushman,* for the plaintiffs, insisted that the precinct had never ceased to exist as a corporation ; *St.* 1786, *c.* 10 ; that some of the members did not apply for the act incorporating the new society, and such members were

not disfranchised by the legislature, but after the act of 1792, they constituted the precinct; *First Parish in Brunswick* v. *Dunning*, 7 Mass. R. 445 ; *First Parish in Sutton* v. *Cole*, 8 Mass. R. 96 ; *First Parish in Medford* v. *Pratt*, 4 Pick. 222 ; *St.* 1823, *c.* 106 ; that the vote of 1829, that the precinct was not a corporation, was of no effect ; that the proprietors of common and undivided lands could not resume their grant to the precinct ; *Rehoboth* v. *Hunt*, 1 Pick. 224 ; that the legislature could not transfer the property of the precinct to the new society ; that the precinct, while unorganized, could not be disseised ; and that the possession by the new society was with the consent of the precinct, and consequently could not create an adverse title ; *First Parish in Medford* v. *Pratt*, 4 Pick. 222.

MORTON J. delivered the opinion of the Court. This case presents several interesting questions ; some of which, certainly, are difficult of solution. We have, however, been able to agree upon enough of them to decide the case ; and it is not our duty, nor have we leisure or inclination, to enter into speculations upon the others.

In 1774, the original proprietors of Rehoboth granted the *locus in quo* to the second precinct, for a meetinghouse lot, and for certain other purposes connected with it ; and there can be no doubt that, under this grant, the parish acquired a good title, and that it continued up to 1792, unimpaired. In 1761 the committee of this precinct was invested with corporate powers, and made trustees of the funds of the precinct. Whether these trustees also managed the real estate for the corporation, or whether it was managed by other agents, does not appear, nor is it material.

In 1792, on the application of the precinct, as well as on their own individual petition, nearly all the members were incorporated into a poll parish, by the name of " The Catholic Congregational Church and Society in the Second Precinct in Rehoboth." This corporation was duly organized and has kept up a regular organization, exercising all the usual powers of a parish, to the present day. It was undoubtedly intended by the legislature, and by all the parties to the transaction, to be a substitute for the old parish, and to succeed to all its

*Second Precinct in Rehoboth v. Carpenter.*

*April term 1834, at Taunton.*

rights, privileges and property. This act expressly repeals the act incorporating a board of trustees to manage the funds of the parish; and establishes a new board of trustees under the new society, and not only authorizes them to hold and manage the property, both real and personal, of the society, but transfers to them all the property then in the hands of the old trustees. The former board thenceforward ceased to act, and has become defunct by the death of all its members, and for want of a succession. Whether the board can be revived, is one of the questions suggested by this case.

The trustees under the society immediately took possession of the real and personal property, of which the *locus in quo* is a part, and have had the undisputed and uninterrupted control and management of it, till the entry made by the plaintiffs just before the commencement of this action. Now, whatever were the legal rights of the parish or the old board of trustees; whether either or both of these bodies had ceased to have a legal existence, and whether the legislative transfer had any effect upon their legal rights, it would seem that the society or the new board of trustees acquired actual possession of the property. And if the old corporation continued to exist, they were disseised of the real estate. The new corporations were entirely independent of, and unconnected with the old ones. The former could in no sense be the agents or trustees of the latter. The new board of trustees derived their existence from the society and acted for them. They held the property in trust for the society. Their possession was adverse to the parish and old trustees. Undisputed and unexplained possession is always presumed to be under a claim of right. *Kennebec Purchase* v. *Laboree*, 2 Greenleaf, 281.

But there is one fact which removes all doubt upon this point, if any existed. The original proprietors reconsidered their vote granting the land in question to the parish; made a new grant of the same with some additions and reservations to the new corporation; and by their committee, duly authorized for the purpose, made a conveyance of the same by their deed, with covenants of warranty, to the new corporation. Now, although it might not be in the power of the proprietors to reconsider their grant, and although their acts might not have any

legal effect upon the vested rights of the former grantee, the parish, yet this deed, with the entry and occupation under it, would amount to a disseisin.

The language of Chief Justice *Parsons*, in *Higbee* v. *Rice*, 5 Mass. R. 352, is applicable to this point. He says, " A conveyance by deed, duly acknowledged and registered, is by our statute of enrolments equivalent to livery of seisin. Under this deed the tenant entered into the whole, either by right or by wrong. If by wrong, as appears in his case, it was an actual disseisin." And in the recent decision, *Fuller* v. *Ward*, 15 Pick. 189, it is said, that a deed duly executed and recorded " gives to the grantee legal investiture of the land conveyed, and has the same effect as if the grantor entered upon the land and gave actual seisin by the formal delivery of turf and twig." See *Warren* v. *Childs*, 11 Mass. R. 225.

The possession of a party, holding a deed, is always presumed to be under, by virtue of, and according to the deed. The rule is thus laid down by a learned judge of the highest court in the country. " I take the principle of law to be clear, that where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title." *Prescott et al.* v. *Nevers*, 4 Mason, 330. Again, he says, " that where a party enters under a title adverse to the plaintiffs, it is an ouster of, or adverse possession to the true owner." *Lessee of Clarke* v. *Courtney*, 5 Peters, 355.

The unreported case of the *First Parish in Attleborough* v. *Hunt*, which has been referred to, we think, upon the point now under consideration, has no analogy to this. We have looked into that case. The act of incorporation was essentially different from this. The question of possession was very little relied upon, and was very summarily disposed of by the Court. They state, that "in answer to the argument, that the parish have been out of possession more than twenty years, it is sufficient to say that the possession of the society has never been adverse to, but always in consistency with the rights of the parish. *Besides, the parish, as such, had resumed the possession peaceably and with the consent of the society, before the forceable act which is the ground of this action.*"

Second
Precinct in
Rehoboth
v.
Carpenter.

We think it is very manifest that this possession was not by permission of, but adverse to the parish. The vote of reconsideration was an adverse act; the conveyance was also adverse; the occupation under the deed, by every principle of law, must be deemed to be adverse; and the general possession, unexplained, also shows an adverse claim. It cannot, therefore, be doubted that the legal possession vested in the society or their trustees; and it matters nothing to the plaintiffs, which.

The supposition that either of the new corporations held in trust for the parish, is extravagant and unfounded. There is no appearance of a fiduciary relation between them. It is not implied in any of the legislation on the subject; nor does the conduct of any of the parties indicate it.

Nor is there any ground for the argument that the plaintiffs were under a disability, which would prevent them from being disseised, or the statute of limitations from operating against them. If they labored under any disability, it was a voluntary one. They had as much power to act and to assert their rights, at any moment, between the incorporation of the new society and the re-organization of the parish, as they had when they attempted to reënter, or when they brought this action. And a voluntary disqualification to act, can never be a legal excuse for neglecting to assert rights, nor prevent the operation of the statute of limitations.

In view of the whole case, we are of opinion that the plaintiffs were disseised, and that their right of entry was tolled long before they attempted to regain possession for the purpose of maintaining this action.

Our whole reasoning and opinion has proceeded upon the assumption, that the corporate existence of the parish has continued to the present time; and that the second issue has been found for the plaintiffs. But we do not mean to leave the case upon such an assumption. We have intended only to decide, that if the plaintiffs exist as a legal parish, their rights to the property are barred, and that their action cannot be maintained.

The question of the dissolution of the parish is one involved in a good deal of difficulty; one which it is not necessary

to decide; one on which we have formed no opinion; and in relation to which we do not intend to throw out any intimation.

*Second Precinct in Rehoboth v. Carpenter.*

*Verdict set aside and plaintiffs nonsuit.*