# NICHOLS v. BEALMEAR.

TRUSTS AND TRUSTEES; VENDOR AND PURCHASER; NOTICE; PRINCIPAL AND AGENT; ADMISSION; SPECIFIC PERFORMANCE; DECREES.

1. After the execution of a contract to exchange real estate, each party holds his legal title as trustee for the other party. (Following *Griffith* v. *Stewart,* 31 App. D. C. 39, and *Lenman* v. *Jones,* 33 App. D. C. 7.)

2. The equitable estate of the vendee in a contract to sell real estate will avail against any subsequent encumbrance or conveyance acquired from the vendor with notice.

3. Judgment creditors of the vendor in a duly recorded contract for the sale of real estate have constructive notice of the contract, and judgment liens acquired by them after such notice are void and clouds on title, which a court of equity may remove at the instance of the vendee.

4. Where an agent makes a contract in his own name and under his own seal, his principal cannot maintain an action thereon.

5. Where a contract discloses on its face the name of the principal as one of the contracting parties, and his name is attached thereto by his duly authorized agent, it constitutes a valid contract enforceable by the principal, and it is, therefore, immaterial if the agency of the person negotiating the contract is undisclosed, or if the principal subsequently erases his own name, as signed by the agent, and

signs his name himself, as the status of the parties remains un-
changed.

6. Where a fact is averred in a bill in equity, and is admitted in the
answer, the admission is conclusive against the defendant, and evi-
dence tending to dispute it will not be considered.    (Following
*Alfred Richards Brick Co.* v. *Trott,* 23 App. D. C. 284.)

7. A decree of specific performance of a contract to exchange lands, which
requires the plaintiff, as a condition of having specific performance,
to furnish the defendant a good and marketable title of the prop-
erty which he agreed to exchange with defendant, necessarily re-
quires the plaintiff to clear the title of his own property from any
equitable interest which any other person or persons may have
therein.

No. 2206.   Submitted December 12, 1910.   Decided February 6, 1911.

HEARING on an appeal by the defendants from a decree of the
Supreme Court of the District of Columbia, sitting as an equity
court, for the specific performance of a contract to convey land.
*Affirmed.*

The facts are stated in the opinion.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the ap-
pellants.

*Mr. W. W. Millan* and *Mr. R. E. L. Smith* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellants, Daniel H. Nichols, Frank O. Nichols, and Wil-
liam A. Joline, defendants below, appeal from a final decree in
equity directing the specific performance of a contract to con-
vey real estate.   For convenience, Daniel H. Nichols will be
referred to as defendant, and the other defendants as the judg-
ment creditors.

The bill, in substance, alleged that plaintiff, J. Irving Beal-
mear, was the owner of certain real estate in the District of
Columbia, and entered into a contract with defendant to ex-

change it for real estate owned by him; that, under the terms of
the contract, the taxes, water rents, and interest were to be ad-
justed to April 1, 1909; that deeds conveying good and mar-
ketable titles to the respective properties were to be exchanged
clear of all encumbrances, excepting certain trusts specified in
the contract, and that defendant was to pay the cost of holding
a certain trust on his premises until the title should be ex-
amined, providing it did not extend beyond April 1, 1909.

It was further alleged that on March 29, 1909, two suits at
law were filed against the defendant in the supreme court of the
District of Columbia, and on the succeeding day defendant con-
fessed judgment in one suit in favor of Frank O. Nichols for
$1,675, and in the other in favor of William E. Joline for
$584.16. The bill alleged that both judgment creditors had
knowledge of the contract, and charged that the judgments were
obtained for the purpose of hindering and embarrassing plain-
tiff in enforcing his contract; and that the judgments, as mat-
ter of law, are not liens on the property, but constitute clouds
on plaintiff's title.

It is further alleged that on April 1, 1909, and on subsequent
dates, plaintiff tendered himself ready to comply with the
terms of the contract, but that defendant refused to perform
his part of the agreement. Plaintiff prayed that specific per-
formance be decreed, and that the liens of the judgment credit-
ors be declared null and void as affecting his title to said
property.

Defendant and the judgment creditors demurred to the bill.
On hearing, the demurrers were overruled, with leave to an-
swer. Separate answers were filed. The judgment creditors
denied any knowledge of the alleged contract between plaintiff
and defendant, or any information as to the ground upon which
defendant refused to comply with its terms. They admitted
the obtaining of the judgments, averring that the judgments
were to secure bona fide indebtedness, and to protect their own
rights by liens upon the property, and that there was no at-
tempt on their part to hinder or embarrass plaintiff in en__rc-
ing his contract.

Defendant denied that he ever made a contract with the plaintiff; admitted confession of the judgments, alleging that said judgment creditors had no knowledge of the said agreement, and denied that the confession of the judgments was an attempt by him to hinder and embarrass plaintiff. He also alleged that the agreement was entered into between him and another person not the plaintiff, who held himself out to be the owner of the property, and that he subsequently learned that the person with whom he contracted was James A. Bealmear, the father of plaintiff, who did not hold title to the property. The answer then charges James A. Bealmear with making certain false representations by which defendant was induced to sign the contract. We will not stop to consider these matters of fact, since they were properly disposed of by the decree of the court below.

In the body of the contract it appears to have been made between Daniel H. Nichols and J. I. Bealmear, but it is signed by Daniel H. Nichols and J. Irving Bealmear. It is conceded, however, that J. I. Bealmear and J. Irving Bealmear are the same person. We think the evidence supports the view evidently taken by the court below to the effect that the transaction was conducted on behalf of plaintiff by his authorized agent, James A. Bealmear; that the agent signed his principal's name to the contract; that the agent, upon the advice of defendant's counsel, and without the knowledge of defendant, took the contract to Baltimore, where the principal erased his name as signed by his agent, and substituted his name in his own handwriting, the agent signing as a witness; and that, on the following morning, one of the duplicate copies of the contract so signed was returned by the agent to the defendant's counsel. It also appears that James A. Bealmear was authorized to act in this transaction as the agent of plaintiff.

On trial the court decreed that each party should convey to the other "by good and sufficient deed in fee simple, executed, acknowledged, and delivered, according to law, a good and marketable title to the real estate described," the property to be conveyed subject only to the encumbrances assumed by each

in the contract. The court decreed that the judgments "are, as liens against the property hereinbefore decreed to be conveyed to the plaintiff and his right and title thereto, absolutely void and of no effect, and that the conveyance to him hereinbefore provided for shall be free and clear of any and all liens of said judgments or either of them, and the said property fully discharged and freed therefrom." An accounting between the parties was also decreed.

It is urged by counsel for plaintiff that the judgments were procured for the express purpose of so encumbering the title to the Nichols property as to prevent the enforcement of specific performance by plaintiff. Much evidence appears in the record tending to discredit the validity of the judgments. In fact, defendant admits that he confessed the judgments for the purpose of defeating plaintiff. He, however, asserts the validity of the claims upon which the judgments were confessed. The judgment creditors also testified to the validity of their respective claims, and their testimony in that particular has not been contradicted. For the purposes of this case, the good faith of the judgment creditors and the validity of the judgments may be conceded. We are here concerned only with the question of whether or not they are liens against the Nichols property.

From the date of the execution of the contract, there was, in equity, a sale and conversion of the respective properties. Thereafter plaintiff held the legal title to the property to be formally conveyed by him as trustee for defendant, and defendant in turn held the legal title to the property to be conveyed by him as trustee for plaintiff. *Griffith* v. *Stewart,* 31 App. D. C. 29; *Lenman* v. *Jones,* 33 App. D. C. 7. The equitable title having passed by the contract, the plaintiff's equitable interest in the property to be conveyed would avail against any subsequent encumbrance or conveyance acquired from the defendant with notice. In Pomeroy's Eq. Jur. vol. 1, sec. 368, it is said: "As the vendor's legal estate is held by him on a naked trust for the vendee, this trust, impressed upon the land, follows it in the hands of other persons who may succeed to his legal title,—his heirs and his grantees, who take with notice

of the vendee's equitable right. In other words, the vendee's equitable estate avails against the vendor's heirs, devisees, and other voluntary assignees, and his grantees with notice."

The contract had been recorded prior to the date on which defendant confessed judgment on the claims of Nichols and Joline. They must therefore be held to have had constructive notice of its existence. With notice that defendant held the legal title to this property in trust for plaintiff, they could not acquire a lien that would operate to deprive plaintiff of his interest therein or that would either relieve or prevent defendant from fulfilling his agreement with plaintiff. Since the judgments are not liens against the Nichols property, whatever cloud, if any, they are upon the title, should be removed, and this has been accomplished by the decree.

We now come to the erasure and signing by plaintiff. The contract is under seal; and, had the agent signed his own name, instead of his principal's, it would have been the agent's deed and his seal, and not his principal's, and the contract of the agent alone. It is familiar law that where an agent makes a contract in his own name and under his own seal, his principal cannot maintain an action thereon. *Clarke* v. *Courtney,* 5 Pet. 319, 8 L. ed. 140; *Hendrick* v. *Lindsay,* 93 U. S. 143, 23 L. ed. 855. Since, however, the instrument disclosed on its face the name of the principal as one of the contracting parties, and his name was attached thereto by his duly authorized agent at the time of its execution, it constituted a valid contract enforceable by the principal. It is therefore immaterial that the agency of the party negotiating the contract was undisclosed, or that the principal subsequently erased his name as signed by his agent, and substituted it in his own handwriting, since the status of the parties remained unchanged.

Defendant denies the right of plaintiff to enforce specific performance for the lack of mutuality. He insists that plaintiff is not in position to furnish a good and marketable title to the property he contracted to convey, and is therefore estopped from enforcing specific performance against defendant. This contention is based upon a familiar rule of equity that before

one of the contracting parties can enforce specific performance, he must be in a position where the other party could enforce it against him. It developed in the course of the trial in the court below that James A. Bealmear has an equitable interest in the property plaintiff traded to defendant. This fact was clearly established by the evidence. Counsel for defendant now contends that, under this conceded fact, plaintiff was not, at the time he made the contract, in a position where he could perform his part; and, being in that situation, with conditions unchanged at the present time, he cannot compel performance by defendant. Undoubtedly, there is much in this contention, if defendant had availed himself of the opportunity to take advantage of this disclosure.

In the bill, plaintiff alleges that "on the 2d day of March, 1909, and ever since, complainant was and is the owner of, and in possession of, certain real estate situated in the city of Washington, District of Columbia." Then follows a description of the property which plaintiff contracted to convey to defendant. Defendant and the two judgment creditors in their separate answers each admit the truth of the above allegation.

When the evidence disclosed part ownership in James A. Bealmear, defendant should have secured leave of court to amend his answer and set this fact up as a defense. Instead, he elected to stand on his admission, and permitted judgment to be entered upon the issues as originally set forth in the bill and answers. Defendant is now precluded from taking advantage of this evidence as a defense. It is a well settled rule of equity pleading that where a fact is averred in a bill, and admitted by the answer, the admission is conclusive against the defendant, and evidence tending to dispute it should not be considered. *Alfred Richards Brick Co.* v. *Trott,* 23 App. D. C. 284; *Weider* v. *Clark,* 27 Ill. 251; *Lippincott* v. *Ridgway,* 11 N. J. Eq. 526; Dan. Ch. Pl. & Pr. 6th ed. 837; Fletcher, Eq. Pl. & Pr. sec. 314.

The court was compelled to render a decree upon the issues presented by the bill and answers, and the evidence in support thereof. We are of opinion, however, that the decree can be

construed so broadly that no inequity will result from its enforcement. Defendant should not be required to accept the title of plaintiff with the equitable title of James A. Bealmear outstanding; but, inasmuch as the decree requires the plaintiff, "as a condition of having specific performance, to furnish defendant a good and marketable title," plaintiff can only accomplish this by conveying the property clear of all encumbrances, except those assumed in the contract. To this end he must clear the title of any interest James A. Bealmear and wife may have in said property. When plaintiff complies with this condition of the decree, we are unable to discover any equitable reason why the contract should not be enforced. The decree is affirmed, with costs, and it is so ordered. *Affirmed.*

An appeal to the Supreme Court of the United States was allowed February 8, 1911, on application of the appellants.