## PEDEN *versus* MOORE.

Wherever a defendant can maintain a cross action for damages, on account of a defect in personal property purchased by him, or for a non compliance by the plaintiff with his part of the contract; the former may in defence to an action upon his note made in consequence of such purchase or contract, claim a deduction, corresponding with the injury he has sustained.

*Semble,* that where real estate is the subject of the contract, the rule above laid down is different—and a partial defect in title, while the contract remains unrescinded can not be alleged as a defence to an action for the recovery of the purchase money.

If an exception is taken to the *refusal* of a Court to instruct the jury, the bill of exceptions must embrace so much of the evidence as to shew that the instructions asked for arose out of the cause:—but if the instructions actually given by the Court are excepted to, as mistaking the law, then no part of the testimony need be stated.

Debt in Fayette Circuit Court.

This was an action brought by Moore against Peden, to recover the amount of a promissory note. The defendant below plead failure of consideration, payment, and set-off. During the progress of the trial, the defendant below moved the Court to instruct the jury, that if they believed the consideration of the note had failed to the full amount, except what had been paid, they should give a verdict to the defendant. The Court refused to give the charge prayed, but instructed the jury, that unless a total failure of consideration was proved, they should find for the plaintiff; on which charge the jury found for plaintiff.

Peden having taken exceptions to the refusal of the Court to charge as required, and to the instructions thus given—assigned the same as error in this Court.

COLLIER, J.—The defendant in error brought his action against the plaintiff, upon a promissory note.

The pleas were, failure of consideration, payment, and set-off. On the trial the counsel for the plaintiff in error moved the Court to 'instruct the jury "that if they believed that the consideration of the note had failed to the full amount, except what had been paid, that they should find a verdict for the defendant :" which charge, the Court refused to give ; but charged the jury, that although part of the money might have been paid, and that the consideration had failed to a larger amount than the balance due, yet, unless a total failure was proven, to the whole amount of the note, then they should find for the plaintiff the balance not paid. The record does not disclose any part of the testimony given on the trial.

This case presents a question of great intricacy— it is this : is the partial failure of the consideration of a contract available as a legal defence, in reduction of the sum sought to be recovered. The perplexity experienced in examining this question, arises not from its intrinsic difficulty, but rather from the great variety of decisions which have been made upon the point. Amidst this conflict of opinion, we are naturally led to a review of the authorities as the surest guide to a correct conclusion.

And I would premise, that it may be laid down as a legal position, that with regard to their efficacy and properties, there is no difference at Common Law, between verbal and written contracts ; but the difference is between parol or written contracts and specialties.[a] So far as this case is concerned, we have no statute varying the Common Law in this particular : hence every defence which may be made against a verbal contract, is allowable against one which is merely written.

*7 TermR. 350 : Chit. on Con. 2.*

*Starkie*, in treating of the consideration of Contracts says, that it is now completely settled that a partial failure, which may be the subject of an action for unliquidated damages, and which leaves the whole of a contract open and unrescinded, cannot be enquired into in an action on a bill or note; but where the partial failure arises from a fraud, it is a defence to the action.[a]

[a]2Starkies Evi. 280

*Chitty*, in his *Treatise on Bills*, observes, that where the consideration of a bill fails, in part as to a specific liquidated amount, the fact may be shown in defence at law ; but where a partial failure of consideration arises from unliquidated damages sustained by breach of a subsisting contract, the performance of which was the consideration of the bill, such breach cannot be investigated in an action on the bill, but the defendant must resort to his cross action.[b]

[b]Chitty on bills 7th A. edi. 71.

The younger *Chitty*, in his *Treatise on Contracts*, a publication of more recent date, remarks, that the Courts have of late, to prevent circuity of action and unnecessary litigation, allowed a defendant in case of a partial failure of consideration, instead of bringing a cross action, to object, in reduction of damages, such partial failure of consideration.[c]

[c]Chitty on Con. 276, ib.Com.L. 153, 1Chit Pl. 4th ed. 281, Chip. Rep. 159, 3N.Hamp Rep. 455.

This may suffice to show the opinions of the latest elementary writers. We now proceed to an examination of the adjudged cases on which they predicate their assertions of the law.

[d]Peake's Cases 61

In *Barber* vs. *Backhouse*,[d] the payee brought an action on a bill of exchange,—the defendant paid part of the money into Court, and it appeared upon trial that there was no consideration for the residue. It was however urged for the plaintiff, that the pay-

ment of the money into Court, admitted the bill was good for part, and if it was good in part, it was good *in toto.* But Lord *Kenyon* declared himself clearly of a contrary opinion : whereupon the jury found for the defendant, and the Plaintiff acquiesced.

*Ledger* vs. *Ewer,*[a] was an action by the payee of a bill against the acceptor : the consideration appeared to be, that the plaintiff had taken the defendant into partnership ; but on the defendant's friend's advice, he dissolved the connection. There was evidence of fraud on the plaintiff's part in drawing the defendant into the engagement, which Lord *Kenyon* left to the jury, with the instruction, that if they were against the defendant on the evidence of fraud, they should take into consideration the amount of damages which the plaintiff had sustained, and were not obliged to find more.

In *Morgan* vs. *Richardson,*[b] the drawer of a bill payable to his order, brought a suit against the acceptor. The defence relied on was, that the bill had been accepted for the price of some hams purchased of the plaintiff by the defendant, to be sent to the East Indies, which were almost quite unmarketable. The sum for which they were sold by the defendant was paid into Court. Lord *Ellenborough* held, that though where the consideration of a bill fails entirely, this will be a sufficient defence to an action upon it, by the original party ; it is no defence to such action that the consideration fails partially, but that under such circumstances the remedy is by cross action.

In *Fleming* vs. *Simpson,*[c] Lord *Ellenborough* ruled that if there was a fraud on the part of the seller, in shipping a commodity of a quality very inferior to

[a] Peake's Cas. 216.

[b] 1 Camp. 40, note.

[c] 1 Camp. 40, note.

that ordered, it would constitute an available defence
to an action predicated upon such sale; but if there
was no fraud, the defence was not sufficient.

In *Denew* vs. *Daverell*,[a] Lord *Ellenborough* distin- [a] 3 Camp. 451
guished between a special contract and a *quantum
meruit*: in the first case he remarked, it had been
usual to leave the plaintiff to his cross action, for any
negligence of which he complains; but in the latter,
a just estimate may be placed upon his services, and
if they are found to be wholly abortive, he is entitled
to no compensation.

In *Basten* vs. *Butter*,[b] Lord *Ellenborough* took the [b] 7 East 479
same distinction. Mr. Justice *Lawrence* thought
that even in the case of a special contract, the defend-
ant might be let into the defence, if he has given
notice to the plaintiff: and *Le Blanc*, Justice,
thought that in either case the plaintiff ought to come
prepared to meet the defence.

In *Tye* vs. *Gwynne*,[c] the plaintiff as drawer and [c] 2 Camp. 346.
payee brought his action on a bill of exchange against
the acceptor. The defendant proposed to prove that
the bill was accepted for the price of goods sold for
exportation, and the goods were of a bad quality and
badly packed; so that the consideration for the ac-
ceptance had in a great measure failed. Lord *Ellen-
borough* held that the facts proposed to be proved did
not offer a legal defence, and observed that " a bill of
exchange cannot be accepted on a *quantum meruit*.
There is a difference between want of consideration,
and failure of consideration : the former may be
given in evidence to reduce the damages—the latter
cannot, but furnishes a distinct and independent
cause of action."                                       [d] 3 Starkie N. P. Rep.

In *Germaine* vs. *Burton*,[d] it was decided if after a 32

sale by sample, at an agreed price, goods of an inferior quality are furnished, the vendee may prove such inferiority and thereby reduce the recovery to their actual value. A note of the reporter considers this case as founded upon the justness of permitting the vendee to object in diminution of damages, instead of forcing him to resort to a cross action upon the warranty.

a9 Barn. & Cress. 259

In *Poulton* vs. *Lattimore,* the plaintiff sold to the defendant some *cinq foin seed,* which he warranted to be new, good, growing seed. A short time after the sale, the buyer was told by a person who was a competent judge that the seed did not correspond with the warranty; but he did not give notice of the deficiency to the plaintiff, and afterwards sowed a part and sold the balance. It was held competent for the defendant to show the falsity of the warranty.

b 13 Johns. 302.

In *Beecher* vs. *Vrooman,* it was decided that in an action for the price of a chattel, the defendant may prove a deceit in the sale, and that the chattel was of no value in defeasance of the action: or if the value is only partially diminished by the deficit, he may show that, in mitigation of damages. No notice is taken of the distinction between a sale at an agreed price, and a *quantum valebat.*

c 14 Johns. 377.

In *Grant* vs. *Button,* it was decided in a case where the price of labor was expressly stipulated, that the plaintiff's claim may be diminished by shewing that the work was not faithfully done.

In *Miller* vs. *Smith,* it was proved at the trial, that the consignees and agents of the plaintiff sold to the defendant a quantity of tobacco, under an express representation that it was as good as the defendant had before purchased of them:—the tobacco was de-

d 1 Mason 437.

livered: and sometime afterwards the defendant com-plained that it was not as good as it was represented, and desired to rescind the contract, which the Plaintiff refused. The question of law was raised, whether the defendant was entitled to a deduction for the supposed misrepresentation. Mr. Justice *Story* in his charge to the jury observes "There is no pretence in this case that the representation was fraudulent. It was made, all parties agree, innocently under a misapprehension of the state of the tobacco, which had not been examined by the consignees." And again "where goods are sold as of a certain quality, and they turn out to be of an inferior quality, the defendant may in an action for goods sold and delivered, give the facts in evidence to reduce the damages: for the plaintiff is entitled to recover no more than the real value of his goods. The authorities directly support this doctrine: and there is neither reason or justice in straining after technical objections to overthrow it."

The case of *Crowninshield* vs. *Robinson, et. al.*[a] was an action for negligence in keeping the plaintiff's sheep, founded on a breach of the defendant's special contract. The defendant insisted upon deducting from the damages the compensation due him for keep-ing the sheep. The Court say that they are fully aware of the strong leaning of the later authorities in favor of the doctrine which would tolerate the de-fence: but they thought it at most but an equita-ble set off, which should be allowed only when it cannot work against equity, and as the verdict would not necessarily be a bar at the suit of the defendant, and the plaintiff might be doubly charged, they thought it best to leave the defendants to their cross action. J

[a] 1 Mason 93.

am sensible that this case did not present the question of a partial failure of consideration. I refer to it only to show, from the opinion of a very able court, the increased disposition manifested by recent decisions, so to adjust rights as to avoid multiplicity of actions.

This discrepancy in decision is a very full illustration of the uncertainty which pervades our system of jurisprudence. If the weight of authority be not favorable to an allowance of the defence, the contradiction is certainly so great, as to authorise us to consider the question as *res integra*, and pursue the more ancient rule which denies the defence, or else adopt more recent authority as our guide. In determining which course shall direct us, it is proper to consult the policy of our laws, and inquire what the dictates of justice demand.

It is our policy to avoid circuity of action, that litigation may be stopped in its germ before it is permitted to put forth its branches. This idea is most strikingly illustrated by our statutes providing for arbitration and set off, as well as by the decisions of our Courts. Now to permit a defendant to allege in diminution of a sum sought to be recovered by breach of his contract, that the consideration which induced the contract on his part, has partially failed, would have the effect of making one action subserve the purpose of two: and upon the score of convenience it must be unimportant to the plaintiff whether his recovery is diminished, or whether after having recovered the entire sum which the defendant has agreed to pay him, he is compelled to refund a portion of it; or if important, the importance would consist in ending litigation and avoiding the costs of the defendant's

action.   And surely it would de more compatible with justice to permit a party to retain that, which *ex æquo et bono* cannot be demanded of him, and which by law he may recover back: and more especially, when none of the great principles of right, or the landmarks of property would be disturbed.

Perhaps it may be said that the inquiry is too complex for the determination of an ordinary jury.   Not so.   There would be no more difficulty in ascertaining the sum to be deducted from the defendant's indebtedness, than in admeasuring the *quantum* of damages, sustained in an action for a false warranty, or for a deceit: in either case the jury will naturally inquire the sum which was agreed to be paid, and to what extent the consideration is deficient; so that the obstacles to the achievement of justice will not be greater in the one case than the other.

I am entirely aware of the decisions which inhibit the defence even of a total failure where there is a warranty on which the defendant may have his remedy.   These decisions doubtless proceed upon the principle that the warranty is a subsisting contract, and the damages sustained by its breach unliquidated. I however consider them so far shaken, if not overruled, as to leave the question open for examination.

Upon authority both in point of respectability and numbers, it is clearly proveable that where fraud enters into the transaction, it is competent for the defendant upon proof of it, to shew a defect in the consideration in diminution of damages.   This qualified admission of the defence, originated from the rule, that fraud avoids a contract *ab initio*.   In point of justice I can discover no sufficient reason for permitting the defence to be set up, where there is a fraud in

the transaction, and denying it where there is a false warranty unaccompanied by a fraud. In either case it is the duty of the jury to graduate the plaintiff's recovery by the injury which the defendant has sustained : for the old Common Law notion that fraud so vitiated every contract which partook of it, as not to allow of a recovery, though it but partially impaired the benefit which the defendant expected to derive, has been exploded—more recent authority only allowing it to go in reduction of damages. The cases of *Poulton* vs. *Latiimore, Miller* vs. *Smith, Germaine* vs. *Burton,* and others which are cited, are cases in which the defendant had the plaintiff's warranty.[a] Yet this circumstance is not considered by the Courts which decided them as interposing an obstacle to the defence.

[a]Chit.Con. 134.

I very readily acknowledge that I have examined this case under circumstances somewhat embarrassing. My earlier impressions of law were adverse to an allowance of the defence, unless a fraud was proven. But I entered upon its examination with a solicitude to learn in what manner it had been heretofore adjusted; and not with any particular desire to sustain my own opinion. The result is a conviction that the defence is not inhibited by the weight of authority. Under this impression I have consulted principle with a view to learn whether it afforded a barrier. My reflections have suggested none. Believing therefore that the greater benefit would result from its toleration, we are of opinion, that wherever a defendant can maintain a cross action for damages on account of a defect in personal property purchased by him, or for a non-compliance by the plaintiff with his part of the contract, he may in defence to an ac-

tion upon his note, made in consequence of such purchase or contract, claim a deduction corresponding with the injury he has sustained.   When real estate is the consideration the law perhaps is different, and a partial defect in title, so long as the contract is un-rescinded, could not be alleged as a defence to an action for the purchase money, and this difference is to be attributed to the extensive jurisdiction exercised by chancery over the title to real estate, by causing it to be perfected; and to the additional cause, that the vendee sustains no injury by a defect of title so long as he retains the possession.—*Christian* vs. *Scott.*[a]

[a] 1 Stew'ts Rep. 490—2 Wheat. Rep. 13.

The bill of exceptions in this case does not disclose any part of the testimony given on the trial, and the first inclination of my mind was that because of this omission we could not know that the portion of the opinion of the Court excepted to, was elicited by the evidence.   But further reflection has convinced me that the true rule upon this point, is this—where an exception is taken for a refusal to instruct, the bill must embrace so much of the evidence as to shew that the instructions asked for, arose out of the cause: but where instructions actually given are excepted to as mistaking the law, no part of the testimony need be stated, to authorise the appellate Court to revise the case upon the bill of exceptions :   and this distinction is founded upon the presumption that whatever is done in a Court of Justice will be presumed to be legally done, until the contrary appears—*Vasse* vs. *Smith,*[b]—*Pennock, et. al.* vs. *Dialogue.*[c]   Had the Judge merely refused the instructions asked, we could not have revised the legal question; but he has gone farther and stated his opinion upon the law to

[b] 6 Cranch, 226.
[c] 2 Peters', 15.

the jury.   In this we are of opinion he has erred, and are therefore in favor of reversing the judgment and remanding the cause.

This case presents other questions of law, but as the one already considered, is decisive of it, we decline examining them.

SAFFOLD, J.—The highly important doctrine of partial failure of consideration of contracts involved in this case; and under what circumstances it is available as a defence at law, have often produced difficulty and embarrassment in the Judicial department of the several States of the Union, as well as in Europe.

Not being prepared to concur in all the views stated in the Opinion just delivered by my brother *Collier*, it is sufficient to declare my concurrence in the judgment.   By this course circuity of actions and increased litigation are often avoided, and justice obtained, when it would otherwise be beyond the reach of the party aggrieved.

Having for many years held the same principles in which I now concur, instead of entering anew into an investigation of the doctrine, I refer to the Opinion of this Court, delivered a year ago, in the case of *McMillion* vs. *Pigg and Marr*,[a] for an exposition of the views and authorities on which my opinion is founded.   The authorities there reviewed tend strongly to the same conclusion.

PERRY, J. not sitting.

[a] 3 Stew't. Rep. 165.