# CARTER vs. DOE EX DEM. CHAUDRON.

1. When a conveyance under seal is executed by an agent, to constitute it the deed of the principal he, and not the agent, must appear from the body of the deed to be the grantor, and the deed must be signed with his name and purport to be sealed with his seal.

2. One seal may be adopted by any number of persons, and answer for all of them; and where the seal affixed might be regarded as the seal either of the agent or of the principal, since the seal of itself is incapable of identification as the seal of either, we must look to the body of the instrument, and construe it to be the deed of the party intended to be bound by it as grantor.

3. A deed was executed in these words: "This indenture made and entered into between J. K. (the principal) and S. H. G. (the agent,) both of Mobile city in the Alabama Territory, of the first part, and D. D. of the city and Territory aforesaid, of the other part, witnesseth: Whereas, the said J. K., by his certain letter of attorney under his hand and seal duly executed, dated March 23, 1818, amongst other things therein contained, did authorize the said S. H. G., in the name of him, the said J. K., and in his behalf, to execute deeds, make sale of such part of his lots and lands, tenements and hereditaments in the town of Mobile, county and Territory aforesaid, as by the said S. H. G. shall be thought fit to be sold   Now this indenture witnesseth, that, for and in consideration of the sum (and) covenants hereinafter mentioned, reserved, and contained, on the part and behalf of the said D. D. to be paid, done and performed, he, the said J. K., by his attorney, S. H. G., hath granted and sold, and by these presents (doth) grant, sell and convey, unto the said D. D. the lots," &c. (here follows a description of them,) "for the sum of fifty dollars each, making altogether the just sum of three hundred dollars, to be paid by the said D. D., his heirs, executors and administrators, to the said J. K., his heirs or assigns, so soon as the Government of the United States shall have confirmed to the said J. K., or his heirs, the title to the said bargained lots of land: To have and to hold the above specified lots, together with all the privileges and appurtenances thereunto belonging, unto the said D. D., his heirs and assigns forever: *Provided, nevertheless,* and it is the true intent and meaning of these presents, and of the parties thereunto, that the said D. D., his heirs, executors and administrators, shall pay, or cause to be paid, to the said J. K., his heirs or assigns, the yearly interest of eight *per cent.* on the said sum of three hundred dollars, until the covenants before mentioned are complied with, the interest to commence from the first day of this present month. January.  In witness whereof, the parties have hereunto set their hands and seals.  Mobile, January 18, 1819."   (Signed) "S. H. G. [Seal] Attorney in fact for J. K."

*Held,* 1. That the deed was well executed as the deed of J. K., the principal;

2. That it conveyed to the grantee but a conditional fee, dependent upon the yearly payment of interest as therein provided;

3. That the grantor and his privies, as to the legal title, are estopped by his deed from saying that it did not pass; and that, upon the confirmation of the grantor's title by the Government, the whole legal title vested in the grantee.

4. When an erroneous affirmative charge is given by the court, either of its own motion, or at the instance of the opposite party, and it is excepted to, it is unnecessary to set out in the bill of exceptions the evidence upon which it is founded.

5. A deed more than thirty years old, having nothing suspicious about it, is presumed to be genuine, without express proof, the witnesses being presumed dead; and when it is found in the proper custody, and is corroborated by enjoyment under it, or by other equivalent explanatory proof, it is allowed to prove itself.

6. When a deed is acknowledged by the grantor on the day of its date, it is a sufficient compliance with the statute, although the certificate of acknowledgment does not state that he acknowledged that he executed it on the day of its date.

ERROR to the Circuit Court of Mobile.
Tried before the Hon. JOHN BRAGG.

EJECTMENT by Chaudron against the plaintiff in error, to recover certain lots situated in the city of Mobile. The statement of facts in the opinion is so full and complete, that it is unnecessary to repeat them here.

JOHN A. CAMPBELL, for plaintiff in error :

1. The secondary evidence of the existence and contents of the power of attorney from Kennedy to Duval was inadmissible. The law presumes the power to have been retained by Garrow, or to have passed to Duval, the purchaser. Inquiry should have been made of Duval's representatives, and the plaintiff should have sworn that he could not produce the deed. The power was not recorded. The vague recollections of a witness was very unsatisfactory testimony, which should not have been allowed, except as a matter of necessity. Garrow does not say he returned the deed to Kennedy. He merely presumes so, because he could not find it. The cases do not tolerate such laxity as appears here. 11 Ala. 239; 2 Ala. 144; 9 Porter, 40; 7 Peters, 99; 1 Porter, 229; 8 Porter, 529; 2 Ala., 58; 4 Ala., 458.

2. The deed from Duval to George Getz was not produced, but a copy merely. No inquiry was ever made for this deed of any one. The plaintiff did not swear that he could not produce it; nor was any diligence used to find it. The only fact proved concerning it was, that Getz had died in 1840, at Philadelphia, and that the person testifying did not know of any administration, and that there were no heirs. In all cases

there had been efforts to get the original; inquiries for the deed, of parties who had it, or might be supposed to have it, whether in or out of the State. Here none was made. Cases cited above; 5 Peters, 233. In this case it was shown that the lot had been sold, but no inquiry was made of the vendee for the muniment of title.

3. In the record there is the statement of another deed introduced, upon the statement that the grantee resided beyond the State, and the attorney had written for it without having received an answer. The cases require a larger diligence than either of these instances indicate.

4. We objected to the certificates of acknowledgment upon the authority of the case, 5 Porter, 413; 13 Ala., 370–652.

5. We insist that the deed purported to be made by Garrow, as attorney, cannot be considered as the deed of Kennedy. The instrument is sealed by Garrow, and he acknowledges that he signed, sealed and delivered it. The deed is the deed of Garrow. 4 Hill, 351; 23 Wend., 435; 2 Cushing, 337; 5 Peters, 319; 13 Metcalf, 498. The cases on the other side are cases of executory contracts, where the rule is not applied in the strictness that is used in deeds of real property. The distinction is explained by the Supreme Court of the United States in the cases cited; or there were circumstances patent upon the deed to show that the seal employed was the seal of the principal. In this case Garrow names himself in the premises as a party to the instrument. He closes the deed (*cujus testimonium* clause) thus: "In witness whereof the parties have hereunto set their hands and seals." Garrow signs and seals for himself; and this is fully shown by his acknowledgment, made contemporaneously, in which he describes the instrument as having been signed, sealed and delivered to Daniel Duval by him.

6. We insist the court erred in the interpretation it gave to the deed. The deed purports to be made for the "consideration of the sum, covenants hereinafter mentioned, reserved and contained, on the part of the said Daniel Duval, to be done and performed"—he grants and sells certain lots "for the sum of three hundred dollars, to be paid by the said Daniel Duval, his heirs, executors, administrators and assigns, to Joshua Kennedy, as soon as the Government of the United States

shall have confirmed to the said Joshua Kennedy, or his heirs, the title to the said bargained lots of land : *Provided, nevertheless*, that it is the true intent and meaning of these presents and the parties hereto, that said Daniel Duval, his heirs and assigns, shall pay or cause to be paid to the said Joshua Kennedy, his heirs or assigns, the yearly interest of eight per cent. per annum until the covenants before mentioned are complied with. The interest to commence the first day of this present month of January." We contend that the deed is a conditional deed, and may be avoided by the non-payment of the purchase money and entry. In this case the heirs of Kennedy recovered the land, and may hold without any other act upon proof of the non-performance of the condition. The authorities are conclusive to show that these are suitable words to form a condition. 2 Thomas's Coke, 5–6 ; 5 Viner's Ab., 47 ; 3 Comyn., 86; 5 Serg. & R., 385 ; Crabb on Real Prop., § 2140 ; 2 Co. Litt., 112–3 ; 1 Shep. Touch., 121 ; 5 Mass., 320–324.

7. The charge of the court to the effect, that the Price claim being confirmed to J. K. and other representatives of Price, inured to the benefit of Duval, to the exclusion of J. K., was erroneous. In 1818, at the date of this deed, J. Kennedy at most had but an equitable title to one half of the lands. Six years afterwards he gets a legal title to his one half, as well as to that of Wm. E. Kennedy. His legal title thus acquired for one half was but for one half. The equity of the heirs of Wm. E. Kennedy, at least to the extent of one half, was superior to the title of Duval. Duval cannot have the benefit of the doctrine of estoppel, for any save the interest to which Joshua Kennedy was entitled. The trust in favor of Wm. E. Kennedy's heirs could not be defeated by the conveyance of 1818 to Duval ; nor by the acquisition of the legal title by the act of confirmation. The confirmation enured to the benefit of him who had the best right to call for it. The best right to one half was in the heirs of Wm. E. Kennedy. Wm. E. Kennedy never disposed of his legal estate, except to Joshua Kennedy in trust. The doctrine of estoppel does not apply to this case. Joshua Kennedy, as trustee, cannot be held to estoppels to which he was liable individually. 13 John., 463–4; 8 Cowen, 543–565–587 ; 9 Cowen, 271.

8. The evidence of the verdict in ejectment, and the ground

on which it was given, was inadmissible. It proceeded upon a matter of boundary, and the verdict was evidence of the line between the lands of J. Kennedy and Wm. E. Kennedy, as shown by the Mathews map.

9. The evidence of deeds made long after the deed to Duval, not calling for that deed, and while the property was in dispute, as evidence to construe and locate that deed, ought not to have been admitted. Such proof had no tendency to explain the Duval deed. Kennedy had lots for sale, and the grantees purchased lots he offered. His contract of sale and the deed he made contained no reference to Duval or to Duval's rights. The plaintiffs desired to raise the inference, because he had sold the rest of the land to others, and had made no sale of the lots claimed under the deed to Duval, that he had sold to Duval the particular land now claimed. Neither the fact of a sale, nor the location of the land in the instrument produced, could be properly shown by such testimony. There was no relation between these transactions. They occurred at long and distant intervals; were perfectly independent as to subject matter, parties, considerations, and the one transaction could not be legitimately explained by the others. This objection applies to the different deeds introduced, and a map of the square, as set forth in the bill of exceptions. The fact, that trespassers occupied those lands now claimed by Duval, would account for their not being sold; nor could any inference be drawn from the fact that Kennedy did not choose to make a different sale. It was shown in evidence that the Price title was not finally settled till 1837, and Kennedy died in 1838, and those lands were recovered in 1842. The dates of the deeds, &c., are taken from the record of the Kennedy case.

P. Phillips, contra:

The deed was made January, 1819, and recorded the next month. It recites specifically the power of attorney which authorized it. The deed was more than thirty years old, possession had accompanied it, and this would of itself have been sufficient to presume the existence of the power. Doe, demise Farmer's Heirs, v. Eslava, 11 Ala. 1020; 1 Greenleaf on Ev. §149.

The evidence of the probable loss of the original was sufficient, especially when coupled with the evidence of the subscribing witness, Carpenter, that, in reference to this sale, Kennedy subsequently said, that "whatever Garrow had done was right."

Certified copy of deed from Duval to Getz, 7th May, 1820. Besides the lapse of time and the possession which followed the deed, proof was made that Getz died in Philadelphia, without any heirs or representatives in this State. Scott v. Rivers, 1 S & P. 22; Smith v. Armstead, 7 Ala. 702.

There was also produced, a mortgage from Getz to Duval for the premises, which, it is recited, are the same as is conveyed by Duval, 7th May, 1820, which mortgage was duly recorded; the proceedings on a bill of foreclosure, and the master's deed under the decree, all of which substantiate the existence of the deed. There was, therefore, no motive to withhold the original, and no suspicion rests upon this transaction; and the rule as to the quantum of evidence to let in secondary evidence, rests very much upon these considerations. Toulman v. Juzan, 9 Ala. 694.

The objection to the probate of this deed is, that it does not state the day and the year. But the acknowledgment is tested, "this day and year last within written," which refers to the date of the deed; and the probate is thus, by reference to the body of the deed, made complete. Bradford v. Dawson, 2 Ala. 207.

That the deed was sufficiently executed by the attorney, is abundantly apparent from the body of the deed and the probate. Robinson v. Mauldin, 11 Ala. 984; Varnum et al. v. Evans, 2 McMullen, 409; Montgomery v. Dorion, 7 New Hamp. 475; Stringfellow & Hobson v. Mariott, 1 Ala. 575; Lazarus v. Shearer, 2 ib. 727.

Effect of the deed in conveying subsequently acquired title: 1. The deed contains the statutory warranty, "grant, sell, and convey;" and, in a subsequent part of the deed, the estate is referred to as the said "bargained premises." All the words of the statute are used, and the order constitutes no objection to their efficacy. 2. The language of the deed shows the clear intention that the subsequent confirmation should enure to the benefit of the vendee. The purchase

money was then to be paid, and until that time, interest on the purchase money; and though it may not contain a technical warranty, will operate as an estoppel *in pais*. Welland Canal Co. v. Hathaway, 8 Wend. 483; Derell v. Odell, 3 Hill, 221; Truscott v. Davis, 4 Barb. 498; Trull v. Eastman, 3 Metcalf, 124; 3 McLean, 79.

By force of the statute, the possession is transferred under such a deed as perfectly as if the party had been "enfeoffed with livery of seizin." Clay's Dig. 156, §35; Bliss v. Yancey, 1 Ala. 273; Matthews v. Ward's Lessee, 10 Gill. & J. 448; Bryan v. Bradley, 16 Conn. 474; Wells v. Prince, 4 Mass. 64.

It is not a mere release or quit-claim, but an absolute conveyance of the estate; and by the effect given to it by the statute of uses, it conveys not only the present estate of the grantor, "but barreth and excludeth him of all present and future right to the thing which is so conveyed." 2 Greenl. Cruise, 73.

The Price claim, in 1826, was represented by Joshua Kennedy; he applied for the confirmation of the claim in his own right, and, in 1829, Congress passed an act confirming his claim, and the patent issued to Joshua Kennedy and his assigns. This confirmation operated upon the title which Kennedy had conveyed to Duval, and enured to the benefit of the plaintiff, who held the master's deed under a decree in the foreclosure suit of Duval against Getz. Armstrong v. Chastang's Heirs, MS.; Nolen & Thompson v. Gwyn, 16 Ala. 728; Lands v. Brant, 10 How. 372; Van Renssellear v. Kearney, 11 ib. 322.

Whether Joshua Kennedy was the legal owner of the whole estate prior to confirmation, can make no difference. At law, the title was vested in him by confirmation; and legal conveyances of property, though made before the confirmation, took the benefit of the title such confirmation gave to Kennedy; and it is not in an action of ejectment that we can weigh the equities of William E. Kennedy's heirs.

In the case between the Kennedys, reported in 2 Ala., it will be found that the bill sets out the sales by Joshua in the Price title, and only seeks to make his executors account for them; and the decree of the court proceeds on this view. The

decree declares that "Joshua and William were jointly interested in the Price claim." Further, "that complainants were entitled to an account of moneys received by Joshua Kennedy in his life-time, and by his executors since his decease, upon all sales of land embraced in the Price claim."

It was further decreed, that the complainants be admitted into possession "on an undivided half of the Price claim, save and except such parts thereof as were sold and conveyed by Joshua Kennedy, or the executors of the latter since his decease, and a deed was ordered to be prepared by the master," conveying to the complainants those lands, with the exception aforesaid. And yet, in the face of their own bill, and the decree in their favor, W. E. Kennedy's heirs now declare that the sales of Joshua Kennedy are not to be considered as conclusive, but that they still have a right to assert their interest as against the purchasers of Joshua Kennedy.

The history of this case shows, that from the earliest times Joshua and William exercised ownership over the lands contained in this grant. They each of them made many conveyances in the tract, which were always respected. About 1818, they made a sort of division, and executed a map, on which they marked their initials according to the division. This map was produced by defendant, and was submitted to the jury. The only question of fact was, whether the lot was governed by the present line of Government street to the south, or whether the call of the deed would carry, as defendant contends, altogether south of the present line of Government street. The jury found all the questions for the plaintiff, and the line of Government street, protracted upon this map, shows that these very lots are upon that map marked with the initials "J. K." This is the defendant's own evidence, and the monstrous attempt is now made, after the death of J. Kennedy and W. E. Kennedy, who lived in Mobile years after the sale by Garrow to Duval, and the long and continued possession held under deed, without complaint or disturbing the possessor, by the covetous heirs of Kennedy to assert there is still an interest, at any rate, for one-half, to them in the property conveyed by Kennedy's deed in 1819.

It is contended that the deed is conditional. In the court below, it was put upon the ground that the plaintiff had

not proved the payment of the money, and that this was necessary. It was argued that this was not required; and if it were, that the great lapse of time would be conclusive that it had been paid, notwithstanding the testimony of Garrow upon the subject, which, at most, was only of a negative character. There was no charge asked for by the defendant, because the judge, by a single charge, covered all the questions made by the defendant's counsel. Who could have raised the question, that the deed was conditional, but the defendant's counsel? Surely, it was not for the plaintiff. The court decided that the estate passed by the deed, though there was no proof of the fact of payment; that it was not conditional, nor could it be avoided for the non-payment of the money specified on its face, and that it was a valid instrument, &c.

It is insisted, however, that the bill of exceptions does not sustain the charge, and the deed, upon its face, is conditional. This is denied. It is not pretended that this is a condition precedent to prevent the estate from passing, but a condition subsequent, which will divest the estate. Now, granting this, the defendant would have to show, first, the non-payment of the money constituting the condition; and secondly, an entry for breach of the condition. If defendant offered no evidence to these points, even if the charge were erroneous, it could not injure him; and if he offered evidence, it should be spread by him on the bill of exceptions to show the error. An abstract charge will not cause a reversal, when it could not injure him. There is no evidence in relation to non-payment, except what has already been referred to, and this further evidence, that, in 1842, a recovery was had by the heirs of Joshua and Wm. E. Kennedy, in an action of ejectment against Magee. It is not pretended that this was an entry for condition broken. The recovery in ejectment was against a party who held adversely to the present plaintiff. Chaudron v. Magee, 8 Ala. 370.

It is expressly decided that the entry for a condition broken must be made with that express declaration. O'Brien v. Henry, 6 Ala. 787.

The case cited from 5 Mass. 325, is not in point; there the party had never given up the possession, and could not, there-

fore, make an entry; but here the condition was broken, if any, by the non-payment of the interest annually from 1819, and the non-payment of the principal in 1829, twenty or thirty years before the entry under the action of ejectment!

But we maintain that the deed is not conditional. There is nothing on its face to justify the idea. There is a time fixed for the payment of the principal, and a time for the payment of the interest; but because it is said that the money was to be paid to Kennedy, as soon as the Government shall have confirmed the title, this does not constitute the one the condition of the other.

Again: Wm. E. Kennedy, having parted with his interest, as shown by the map and the proceedings in chancery, and the confirmations of the Government, had no interest in this question; and having no interest, is not in the position of taking this advantage of this breach, even if one existed.

CHILTON, J.—This was an action of ejectment brought by Chaudron against Carter, to recover certain real estate, consisting of lots in the city of Mobile.

The principal questions discussed, and to which we shall mainly direct our inquiries, relate to the sufficiency of the execution, and also to the construction, of a certain deed of conveyance under which the plaintiff below claimed; which deed was executed by one Garrow, as attorney in fact of Joshua Kennedy, and is in these words:

"This indenture, made and entered into between Joshua Kennedy and S. H. Garrow, both of Mobile city in the Alabama Territory, of the first (part,) and Daniel Duval, of the county and Territory aforesaid, of the other part, witnesseth: Whereas, the said Joshua Kennedy, by his certain letter of attorney under his hand and seal, duly executed, dated the 23d day of March, 1818, amongst other things therein contained, did authorize the said S. H. Garrow, in the name of him, the said Joshua Kennedy, and in his behalf, to execute deeds, make sales of such parts of his lots and lands, tenements and hereditaments, in the town of Mobile, county and Territory aforesaid, as by the said S. H. Garrow shall be thought fit to be sold. Now this indenture witnesseth, that for and in consideration of the sum (and) covenants hereinaf-

ter mentioned, reserved and contained, on the part of the said Daniel Duval, to be paid, done and performed, he, the said Joshua Kennedy, by his attorney, S. H. Garrow, hath granted and sold, and by these presents (doth) grant, sell and convey unto the said Daniel Duval," the lots, &c., (here follows a description of six lots, as the property conveyed,) "for the sum of fifty dollars each, making altogether the just sum of three hundred dollars, to be paid by the said Daniel Duval, his heirs, executors and administrators, to the said Joshua Kennedy, his heirs or assigns, as soon as the Government of the United States shall have confirmed to the said Joshua Kennedy, or his heirs, the title to the said bargained lots of land: To have and to hold the above specified lots, together with all the privileges and appurtenances thereunto belonging, unto the said Daniel Duval, his heirs and assigns forever: *Provided, nevertheless*, and it is the true intent and meaning of these presents, and of the parties thereunto, that the said Daniel Duval, his heirs, executors and administrators, shall pay or cause to be paid to the said Joshua Kennedy, his heirs or assigns, the yearly interest of eight per cent. on the said sum of three hundred dollars, until the covenants before mentioned are complied with ; the interest to commence from the first day of this present month, January.

"In witness whereof the parties have hereunto set their hands and seals.   Mobile, January 18th, 1819."

(Signed thus)        "S. H. GARROW, [Seal]
Attorney in fact for J. Kennedy."

The questions arising upon this deed are: First. Is it well executed as the deed of Kennedy, the principal ?  Secondly. Is the deed conditional, leaving the title to be defeated upon the non-performance of the condition ?

As to the first question : In Coombe's case, 9 Co. 75, authority was given by a copy-holder to two persons as his attorneys to surrender ten acres of pasture to the use of J. N. They made the surrender, and the entry on the court roll was, "that the said attorneys in the same court showed the writing aforesaid, bearing date, &c., and they, by virtue of authority to them by the said letter of attorney given, in full court surrendered unto the said lord the said ten acres of pasture to the use of said J. N.;" and the question was, whether the

said surrender was good or not. The court held, that it was good, and resolved, "that when any one has authority as attorney to do any act, he ought to do it in his name who gives the authority; for he appoints the attorney to be in his place and to represent his person; and therefore the attorney cannot do it in his own name, nor as his proper act, but in the name and as the act of him who gives the authority." And when it was objected in that case, that the attorneys had made the surrender in their own name, for the entry was, that " they surrendered," it was answered and resolved by the court, " that they had well performed their authority; for, first, they showed their letter of attorney, and then they, by the authority to them, by the letter of attorney given, surrendered, &c., which is equivalent to saying, we, as attorneys, &c., surrender, &c.; and both these ways are sufficient. * * * But if attorneys have power by writing to make leases by indenture for years, &c., they cannot make indentures in their own names, but in the name of him who gives the warrant."

We are also cited, by the counsel for the plaintiff in error, to the case of the lessee of Clarke et al. v. Cantrey et al. 5 Peters, 319, in which it was held, that a power of attorney given by J. B. Clarke and Eleanor, his wife, to Carey L. Clarke, for the sale of lands, was not properly executed in the following form: "I, the said Carey L. Clarke, attorney as aforesaid, &c., do"—" In witness whereof, the said Carey L. Clarke, attorney as aforesaid, has hereunto subscribed his hand and seal, this 24th day of November, A. D., 1800. Carey L. Clarke, [L. S.]" It was said by the court, that the act of Clarke did not purport to be the act of the principals, but of the attorney; and hence, it fell directly within the influence of the rule laid down in Coombe's case.

Mr. J. Story, after citing Coombe's case as correctly stating the ancient rule of the common law, proceeds to state that " this rule, thus laid down, is regularly true in regard to solemn instruments under seal, although not, as we shall presently see, as to instruments not under seal. Therefore, if a person is authorized by a power of attorney to make a conveyance under seal of the lands of his principal, and he makes the conveyance by a deed in his own name, it will be a void conveyance. And it will make no difference in the

case, that in the deed the agent describes himself as such; as if he says "know all men by these presents, that I, A. B., as agent of C. D., do hereby grant, sell, convey, &c.; or if he signs and seals it, A. B., for C. D.; for in such a case it is still his own deed, and not the deed of his principal." Story on Agency, (2 Ed.) § 148.

The same doctrine is laid down by Mr. Paley in his work on Agency, (2d Am. Ed.) pp. 152–3. But this author further states the law to be, "that if the execution of the deed really appear to be in the name of the principal, the form of words used in the execution is not material; for in a late case, where the principle (that the deed must be in the name of the constituent) was recognized and affirmed, it was deemed sufficient, that opposite the seal was written "for S. B., (the principal,) M. W." (the attorney.) Wilkes v. Back, 2 East, 144. Mr. Paley further says: "Although in these cases of mere ceremonial acts it is indifferent in what order the names stand, whether the principal by the attorney, or the attorney for the principal, yet in the form of a contract made by the attorney the wording is material; as in an indenture of lease, it must in terms be conveyed by the principal, in whom alone the interest is; for the power of attorney, as such, vests no interest in him, and consequently none can pass from him. Therefore, if a lease were made in the name of an attorney, though it were added also, by virtue of a letter of attorney, or, by A. B., as attorney for C. D., it would be a void lease."

This doctrine has undergone elaborate investigation in most of the American courts, and the principle has been, with few exceptions, fully recognized, that the deed must be executed in the name of the principal, and where it is in the name of the agent, as agent for the principal, the superadded words as to the agency are to be regarded as descriptive of the person. Story on Agency, § 151.

In Townsend et al. v. Hubbard and Orcutt, 4 Hill, 451, it was held, by nineteen out of twenty senators, "that a sealed instrument, when executed by one acting as an attorney, must be executed in the name of the principal, and purport to be sealed with his seal." In that case, the deed, in the commencement, set out the names of the principals as the party of the first part, by their agent, H. B.; and "the par-

ties of the first part covenanted to convey," &c., and it conclu-
ded, "In witness whereof, the said H. B., as attorney of the
parties of the first part, and the said parties of the second
part, have hereunto set their hands and seals." (Signed) "H.
B." [L.S.]

Walworth, Chancellor, said: "In an agreement not under
seal, executed by an agent or attorney, in behalf of his prin-
cipal, and where the agent or attorney is duly authorized to
make the agreement, it is sufficient, as a general rule, if it
appears in any part of the instrument that the understand-
ing was, that the principal, and not the agent or attorney,
was the person to be bound for the fulfilment of the contract.
And even in the case of a sealed instrument, executed by
an agent duly authorized by power of attorney under seal,
no particular form of words is necessary to render it valid
and binding on the principal; provided, it appears upon the
face of the instrument that it was intended to be executed as
the deed of the principal, and that the seal affixed to the
instrument is his seal, and not the seal of the agent or attor-
ney merely:" citing Wilkes v. Back, *supra.* There being
several parties to the instrument in that case, and but one
seal, he conceded that it was not necessary to affix a seal for
each party, if it appeared that the seal was intended to be
adopted as the seal of all; but he maintained, that where it
appeared that the seal used was the seal of the attorney, and
not that of the principal, the latter was not bound.

Bronson, J., in delivering the opinion in Townsend v. Cor-
ning, in the Supreme Court, (23 Wend. 442,) said: "It is not
enough that the body of the instrument is drawn in proper
form. It is required to be signed and sealed, before it could
become the deed of any one, and the signature and seal of
one man could not make it the deed of another." See, also,
upon this subject, 2 Kent's Com. 131; Frontin v. Small, 2
Lord Raymond, 1418; Harper v. Hampton, 1 Har. & John.
622–687; Scott v. McAlpin, 155; 1 Bouv.'s Bacon, 526; 2
Cush. 337; 13 Metcalf, 498; 5 Bouv.'s Bacon, 571.

Some of the courts seem to have overlooked the distinction
taken in Coombe's case, between an act to be done *in pais*,
and the execution of a naked authority by deed. This dis-
tinction is drawn with great clearness by the author last above

cited, who says: " This case, therefore, (of making leases by letter of attorney,) seems to differ from that of a surrender of a copyhold, or of livery of seizin of a freehold, by letter of attorney; for in those cases, when they say, " We, A and B, attorney for C," or, " by virtue of a letter of attorney from C." of such a date, &c., "do surrender," &c., or, "deliver to you seizin" of such lands; these are good in this manner, because they are only ministerial ceremonies, or transitory acts *in pais*, the one to be done by holding the court rod, and the other by delivering a turf or twig; and where they do them as attorney, or by virtue of a letter of attorney from their master, the law pronounces thereupon as if they were actually done by the master himself, and carries the possession accordingly; but, in a lease for years, it is quite different, for the indenture or deed alone carries the interest, and is the very essence of the lease, both as to passing it out of the lessor at first, and its subsistence in the lessee afterwards. The very indenture or deed itself is the conveyance, without any subsequent construction or operation of the law thereupon; and, therefore, it must be made in the name and style of him who has such interest to convey, and not in the name of the attorney, who has nothing therein." He says, in the conclusion, that "the attorney must put the hand and seal of the master, and so write the master's name, and deliver it as the act and deed of the master," which delivery agrees with making a surrender by holding the court rod, or making livery of seizin by turf or twig, and proves that there is a great diversity between an attorney making a lease in his name, as attorney, and a surrender of copyhold or livery of seizin of a freehold estate. 5 Bacon's Abr. by Bouv. 571–2; see, also, 2 Str. 705; Cro. Eliz. 115; Rolls Abr. 330; Hopkins v. Mehaffy, 11 Serg. & R. 126; Bogart v. DeBussy, 6 Johns. 94.

The cases of Montgomery v. Dorion, 7 New Hamp. 475; Magill v. Hinsdale, 6 Conn. 464, and, perhaps, the reasoning of Blackford, J., in the case of Deming v. Bullitt, 1 Blf. 241, are opposed to the view which is taken by the counsel for the plaintiff in error. See, also, a dissenting opinion of Dickinson, Senator, in Townsend v. Hubbard, 4 Hill, 361, where the opposite doctrine is attempted to be upheld, and the two last cases cited and relied upon. This doctrine received a

further support by the Court of Appeals of South Carolina, in the case of Varnum, Fuller & Co. v. Evans, 2 McMullen, 409, where it was held, that an instrument under seal, accepting the provisions of an assignment, and releasing certain debts, and in the body of which it was recited by the attorney: "I do hereby, by virtue of the authority vested in me, as aforesaid, in the name and in behalf of the said V. F. & Co., (the principals,) accept, &c., and do further release, &c." Signed, "J. W. [seal] agent for V. F. & Co.," was the deed of V. F. & Co. Oneal, J., in delivering the opinion, after stating the rule in Coombe's case, "that if attorneys have power, by writing, to make leases by indenture, for years, &c., they cannot make indentures in their own names, but in the name of him who gives them warrant," proceeds to say: "This is, I concede, the law governing all deeds made by attorneys, and to it their deeds must conform; but this is done whenever, as in this case, the deed declares it to be made in pursuance of the authority, and in the name and on behalf of the principal."

Three cases from our own reports have been cited, viz: Stringfellow & Hobson v. Marriott, 1 Ala. 573; Lazarus v. Shearer, 2 ib. 718; and Robinson v. Mauldin, 11 ib. 984. The case in 1 Ala., arose upon a warranty not under seal; that in 2 Ala., on a bill of exchange, drawn by the chief engineer of a railroad company, signing his name as such; and the case in 11 Ala. was, whether the acknowledgment of an attorney in fact, certified by the clerk as appearing before him in that capacity, that he (the agent,) signed, sealed, and delivered a certain specified deed, was sufficient, and it was held a sufficient acknowledgment.

The last decision falls directly within the influence of Coombe's case, and, like the surrender, may well be made in the way in which the party made it. To the other two cases, involving the construction of unsolemn instruments, a different rule of construction applies, which is, that the court will look to the whole instrument to gather the true object and intent of the parties; and if it appear that the principal, and not the agent, was intended to be bound, the court will disregard the irregularity or informality in its execution. This rule, it is said, is founded on public policy, for the further-

ance of commerce and convenience of trade. Story on Agency, §§ 154, 269, 270, 275, 276, 395 to 400, and cases cited by this author.

It is very clear, we think, that to constitute it the deed of the principal, he, and not the agent, must appear, from the body of the deed, to be the grantor; and the deed must be signed with his name, and purport to be sealed with his seal. In this case, Kennedy, the principal, grants and conveys; he is made a party of the first part with Garrow, the agent, and the attestation clause is: "In witness whereof, the parties have hereto set their hands and seals." This must mean the persons who compose the party of the first part; for, although the deed is in the form of an indenture, it is, in fact, a deed poll, and purports only to bind one party. It was very inartificially drawn, and as it was the manifest intention to bind the grantor as the party of the first part, we must consider the seal annexed, which purports to be the seal of "the parties," as his, although it may have been intended as the seal of the agent also. It is well settled, that one seal may be adopted by any number of persons, and answer for all of them. Ball v. Dunsterville, 4 Term R. 313; Mill Dam Foundry v. Hovey, 21 Pick. 417; Hatch v. Crawford, Adm'r. 2 Porter, 54.

Indeed, it is manifest, that since impressions upon wax, or other impressible substance, have been superseded by circumflex lines answering to seals, it would, in many cases, be impossible to identify the seal of the grantor as at common law; and the strictness of the common law rules has been relaxed in their application to such cases. And where, as in this case, the seal affixed might be regarded either as the seal of the agent or of the principal, since the seal of itself is incapable of identification as the seal of either, we must look to the body of the instrument, and construe it to be the seal of the party intended to be bound by the deed as the grantor, "ut res magis valeat quam pereat." Reynolds' Heirs v. The Trustees of Glasgow Academy, 6 Dana, 37.

2. As to the question whether this is a conditional deed, and conveyed to the grantee but a conditional fee: The court is unanimous in the opinion, that the fee is conditional, dependent upon the yearly payment of interest as therein pro-

vided. It purports to be made in consideration of the sum and covenants threinafter mentioned, reserved and contained, on the part and behalf of the said Duval, to be paid, done and performed, &c.; and conveys certain lots to Duval, for the sum of three hundred dollars, to be paid by the said Duval, his heirs, &c., to Joshua Kennedy, as soon as the Gov· ernment of the United States shall have confirmed to the said Kennedy, or his heirs, the title to the said bargained lots of land: "To have and to hold, &c., to the said Daniel Duval, his heirs, &c., forever: Provided, nevertheless, and it is the true intent and meaning of these presents, and of the parties thereunto, that the said Duval, his heirs, &c., shall pay, or cause to be paid, to the said Joshua Kennedy, his heirs, &c., the yearly interest of eight per cent. on the said sum of three hundred dollars, until the covenants above mentioned are complied with; the interest to commence from the first day of this present month, January."

The words which will constitute a condition, are stated by Mr. Crabb, in his work on real property, page 800 § 2140, to be "*sub conditione*," "*ita quod*," "*si contingat*," "*proviso*," "there being," &c. He says the word "*proviso*" may operate as a condition, although there be covenants before, if the words forming an entire sentence begin with "*proviso*," and be spoken by the feoffor, vendor or lessor, and the act to be performed or not performed be by the feoffee, vendee or lessee. Dyer, 311.

Lord Coke lays down the rules which must govern in determining when the word "*proviso*" shall constitute an estate or interest conditional, as follows: "When this word shall make an estate or interest conditional, these three things are to be observed: 1. That the *proviso* do not depend upon another sentence, nor participate thereof, but stand originally to itself; 2. That the *proviso* be the words of the bargainor, feoffor, &c.; 3. That it be compulsory to enforce the bargainee, &c., to do an act. Cromwell's Case, 2 Co. 70; Crabb, §2141. See, also, Browning v. Beston, Plow. 131, which was several times elaborately argued, and the old cases all collated.

But it is unnecessary to review the cases bearing on the question as to what shall and what shall not constitute an estate conditional. The books seem generally agreed to

7

assign to the words here used the force and effect of a condition.

In the first volume of the Touchstone, 121, it is said: "Conditions annexed to estates are sometimes so placed and confounded amongst covenants, sometimes so ambiguously drawn, and at all times have in their drawing so much affinity with limitations, that it is hard to discern and distinguish them. Know, therefore, (says the author,) that, for the most part, conditions have conditional words in their frontispiece, and do begin therewith; and that amongst these words there are three that are most proper, which, in and of their own efficacy, without any addition of other words of re-entry in the conclusion of the condition, do make the estate conditional, as *proviso*, *ita quod*, and *sub conditione;* and therefore, if A grant lands to B, to have and to hold to him and his heirs, provided that, or so as, or under this condition, that B do pay to A ten pounds at Easter next, this is a good condition, and the estate is conditional, without any more words." See further, on this point, 5 Vin. Abr. 47; Plow. 131; Rolls' Abr. Conditions, K; 5 Mass. 320; 3 Comyn's Dig. 86; 5 Serg. & Rawles, 385; 2 Bouv. Inst. 272–3; Bacon's Abr. Conditions. H.

3. But it insisted, that the instruction of the Circuit Court to the jury, that this was not a conditional deed, worked no injury to the plaintiff in error, because the bill of exceptions fails to show an entry for condition broken, or even that the condition was broken. This position cannot be sustained; for the rule is settled by numerous decisions of this court, that where an affirmative charge is given by the court, either of its own motion, or at the instance of the opposite party, and is excepted to, it is unnecessary to set out the evidence on which it is founded. Peden v. Moore, 1 Stew. & P. 71; Rowland v. Ladiga, 9 Por. 488; Kirkscy v. Jones, 7 Ala. 623; Dukes v. Leowie, 3 ib. 459; Tharp v. The State, 15 ib. 479; Ware v. Dudley, 16 ib. 742.

The court is clearly put in error in respect of a most important point made in the cause—the construction of the deed; and if the plaintiff below desired to parry the effect of this erroneous construction, he should have caused the whole of the proof to be set forth in the bill of exceptions,

thus certifying to us that the charge was abstract, and had no necessary tendency to mislead, or that, by reason of something else, the charge was rendered innocuous. We cannot presume, from the silence of a bill of exceptions which does not purport to set out all the proof, that the erroneous affirmative charge was either abstract, or not injurious. 6 Ala. 226.

4. Although the deed from Kennedy to Duval contains no covenants of warranty as to title, yet it purports to convey the whole title, and recites the fact, that the title is, in anticipation, to be confirmed by the United States. It was so confirmed. Now, it may be, that William E. Kennedy, or those claiming under him, may have an equity superior to that of Duval. Of this, however, it does not become us to inquire, since this is a proceeding in a court of law, which looks alone to the legal title. As to this legal title, Joshua Kennedy is estopped by his deed from saying that it did not pass, and so, also, are his privies. It is manifest, from the deed itself, that the future confirmation was to operate an investiture of title in the purchaser. That an estoppel operates to pass the title, see 4 Kent, 98. We are, therefore, of the opinion, that the whole legal title vested in Duval upon the confirmation by the Government of Kennedy's title. If such were not the effect of the deed, it would present this singular and absurd contract, that Duval should pay interest yearly on the purchase money agreed to be paid for the land until the principal fell due, and this should fall due and be paid at the moment of time when it was ascertained the purchaser could never obtain what he purchased. The cases cited by the counsel for the defendant in error, clearly show that this deed, with possession taken under it, clearly estops the grantor.

5. As respects the proof of the deed from Kennedy to Duval, and the authority under which the attorney acted, it it is only necessary to recur to the rule, that a deed more than thirty years old, having nothing suspicious about it, is presumed to be genuine without express proof, the witnesses being presumed dead; and when it is found in the proper custody, and is corroborated by enjoyment under it, or by other equivalent explanatory proof, it is allowed to prove itself, or rather, its genuineness is presumed. Greenl. Ev.

§ 144; Phil. Ev. (C. & H.) note 903; Doe ex dem. Farmer's Heirs v. Eslava, 11 Ala. 1028.

The deed before us comes fully up to the requirements of the rule stated, and we think the court did not err in admitting the proof concerning its execution, as no injury resulted to the opposite party.

6. The acknowledgment of the deed from Duval to Getz is sufficient. True, it does not state that the deed was executed on the day it bears date; but this is rendered unnecessary, by the fact that the acknowledgment was on the same day on which the deed was executed, and this has been held sufficient. Bradford v. Dawson, 2 Ala. 207.

We have now noticed the material points which will probably arise upon a subsequent trial. The other minor objections, as to the quantum of preliminary proof to let in secondary evidence, we deem it unnecessary to notice, as, in all probability, they may be avoided, or the proof may present them differently upon another trial.

It follows, from what we have said, as to the conditional character of Kennedy's deed to Duval, that the judgment must be reversed, and the cause remanded.